## HATTIE McGINNIS v. E. T. WOOD AND W. J. WOOD.

1. HOMESTEAD—*Separate Property of Wife,*   Under the statute of this Territory in force in 1891, Statutes of 1890, exempting a homestead to each head of a family, a wife was not entitled to a homestead out of her own land, nor was the husband entitled to a homestead in lands belonging to his wife.

2. HUSBAND AND WIFE—*Head of Family—Wife's Property Not Exempt from Sale Under Mortgage Under Homestead Law of 1890.*   The husband is the head of the family under the Statute of 1890, reserving to the head of every family residing in this Territory, exempt from attachment or execution and every other species of forced sale for the payment of debts (except as otherwise provided), the homestead of the family, and declaring null and void any mortgage upon a designated part of such homestead, does not extend such exemption to the separate property of the wife, although such property is used as a homestead in the ordinary sense, as being the home or residence of the family; and a mortgage executed by the wife upon her separate property so used, is not void, under such statute; the exemption is to the husband, as head of the family, and of the property of the husband, being a homestead; and the provision making null and void a mortgage, applies only to a homestead under the law, that is, the property of the head of the family.

### STATEMENT OF THE CASE.

The facts necessary to be stated herein are:   That the defendants in error, W. J. Wood and E. T. Wood, are husband and wife, and were husband and wife at and during all the times hereinafter mentioned; that prior to the year 1890, the land covered by the mortgage in controversy herein, was a part of the public domain of the United States, and together with other lands was, in the year of 1889, settled upon as a townsite, under the townsite laws of the United States; that the lot in controversy was settled upon and held by the defendant, E. T. Wood, and was deeded to her by the duly authorized townsite trustees of the United States, prior to the execution of

McGinnis v. Wood *et al.*

the mortgage in controversy herein, and the said E. T. Wood was the holder of the title to said lot and the owner thereof, at the time said mortgage was executed and delivered, and has ever since held the title thereto and been the owner thereof; that prior to the making of said mortgage, the defendant had erected and built upon said lot a two story building, suitable for use as a hotel and designed for use as a public hotel; that at the time said building was erected, and occupied as a hotel, prior to the making of said mortgage, the family of the defendants in error' consisted of said defendants in error, husband and wife, and one child, about nine or ten years old. That the family occupied certain rooms in said hotel for family purposes, and used the balance of the building for the purposes of a public hotel, and conducted the business of said hotel, for their own use and profit, and that said family had no other home or place of residence. That on the 27th day of February, 1891, the title to said property, then being in the said defendant, E. T. Wood, the said defendants, E. T. Wood and W. J. Wood, made, executed and delivered to J. W. Johnson their promissory note for the sum of $341, with interest at 8 per cent per annum, due in twelve months. That on the same day the said defendants made executed and delivered to said Johnson, a mortgage on said property, to-wit: On lot numbered 16 in block 25, of the city of Oklahoma City, to secure the payment of said note of $341; that at the time said note and mortgage was executed, the said defendants were husband and wife and living together and occupying said property as husband and wife; that afterwards, the said note was duly transferred before maturity for a valuable consideration to the plaintiff in error; that' at the time said note and mortgage was executed, the said de-

fendant, W. J. Wood, had no interest in said property, except as husband of the defendant, E. T. Wood; that some time prior to the execution of said mortgage, the defendant, W. J. Wood, was indicted for the crime of manslaughter, and at the date of the execution of said mortgage said defendant was at liberty, under bond, to answer said indictment, and was living with his said wife and child in said premises, and was conducting the business therein; that subsequently thereto, said defendant, W. J. Wood, was convicted of said crime of manslaughter and sentenced to imprisonment in the penitentiary at Lansing, Kansas, for a period of eight years, and was at the commencement of these proceedings, and at the time this cause was tried in the court below, still confined and imprisoned under said sentence in said penitentiary. That after the conviction and sentence of said W. J. Wood, the defendant, E. T. Wood, continued to reside in said premises and conduct the business of the hotel, for a short period of time, when she leased the same to another party to conduct said business, reserving one room therein for the family uses of herself and daughter, paying no rent or board for herself or child, said board and rent being a part of the consideration for such leasing and the sum of $35 per month in addition, being paid to her by the tenant for the use of said premises. Default having been made, in the payment of said note, this action was commenced to recover judgment on said note and to foreclose the lien of said mortgage upon said premises, in the district court of Oklahoma county. And afterwards, on the — day of November, 1894, said district court made an order referring said cause to J. S. Jenkins, Esq., as referee, to examine and report upon all matters of both law and fact involved therein. That afterwards said referee made his

report and findings both of law and fact, in said cause to said court, and recommended to said court that the plaintiff therein have and recover from the defendants, W. J. Wood and E. T. Wood, the sum of $441.84, with interest at the rate of 8 per cent. per annum upon said judgment, and also costs.

The second finding of law by said referee was, that the property in controversy was the city homestead of the family at the time of the execution of the mortgage; that it has been the homestead of the family and is now the homestead of the defendants. *Third*, that the husband can claim a homestead in the separate property of the wife, under the statute of 1890. *Fourth*, that a homestead under the statutes of 1890, was exempt to the head of the family without reference to the title, whether it be vested in the husband or the wife, or whether it was community property. *Fifth*, that no temporary renting of the homestead will be an abandonment of it. *Sixth*, that the mortgage herein was a mortgage on the homestead of the family and is absolutely void.

Plaintiff in error duly excepted to the rulings and findings of said referee, and filed her bill of exceptions before said referee.

The substance of said exceptions and bill of exceptions being the sixth finding of fact by the referee in finding and holding that the property, being a hotel, could be held as a homestead; and to the sixth finding of law by said referee, that the mortgage on said city property was absolutely void; and to the judgment and report of said referee, because he did not report or recommend a judgment of foreclosure of the mortgage. And afterwards, plaintiff in error moved the court to set aside the parts and findings, following of the report of the referee theretofore filed in the cause, to-wit:

1. The sixth finding of fact of said referee's report, because it is contrary to the law and evidence.

2. The second finding of law, because it is contrary to the law upon the facts proven.

3. The third and fourth findings, as being contrary to law.

4. The sixth, as contrary to both law and fact, and contrary to the law arising out of the facts.

Which motion, being heard by the court, was overruled, and plaintiff in error excepted thereto. Thereupon, the court made and entered up judgment in said cause that the premises in question · was the homestead of the defendants; that the mortgage filed in said cause is not a lien on said homestead; that said mortgage not leaving to said defendants 80 acres of land exempt from mortgage under the statutes, is null and · void, and said court entered judgment in favor of the plaintiff in error and against the defendants in error, according to the referee's report on said promissory note. To that part of the judgment, order and decree of the court, declaring said mortgage not a lein on the real estate, upon which it was executed, and that said mortgage is null and void, and that said house and lot were a homestead, said plaintiff in error duly excepted and filed a motion in said court for a new trial; the motion being overruled by the court, and said ruling being excepted to by plaintiff in error, plaintiff in error has duly brought said cause to this court by petition in error for review.

*J. L. Brown* for plaintiff in error.

*Amos Green & Son* for defendants in error.

McGinnis v. Wood *et al.*

The opinion of the court was delivered by

TARSNEY, J.: The view which we must take of this case, as determining the rights of the parties upon this record, renders it unnecessary that we should consider the questions discussed by counsel orally and in their briefs as to whether the character of the occupancy of the premises was such, independent of the ownership of the premises, as to constitute that occupancy required to establish a homestead; and, second, whether the statute in force at the time of the making of the mortgage extended to property occupied by a family in a town or city, so as to make invalid a mortgage executed upon such property; or, in other words, whether the prohibition of the statute against mortgaging of homesteads extended beyond agricultural homesteads.

Section 2860, of the Statutes of 1890, provided as follows:

" The following property shall be reserved to the head of every family residing in the Territory, exempt from attachment or execution and every other species of forced sale for the payment of debts except as hereinafter provided:   First, the homestead of the family."

Then followed, under fifteen additional paragraphs, an enumeration of various kinds of personal property, also exempted.

Section 2862 of said Statutes specifically enumerates the different kinds and amounts of property that should be reserved, exempt from forced sale, to persons other than the heads of families.

The exemption of homesteads or the place of family residence, from seizure or sale, for the satisfaction of debt, is purely of statutory creation and regulation, and is quite modern in its origin.   While there are statutes in nearly every state of the Union which exempts such

homestead from forced sale to satisfy debt, the oldest of these statutes are scarce older than the age of the members of this court. Such statutes are not uniform, either as to the extent of the exemption, or as to the beneficiaries who may be entitled to and may assert such exemption. Hence, there is no uniformity in the decis- ions of the courts of the several states, clearly determin- ing what property is so exempted or by whom the exemp- tion may be claimed. Nor is there any uniformity in the authorities regarding the construction of such stat- utes whether thay shall be strictly or liberally construed. In some of the states the exemption is of the homestead to the family, and the exemption is to the family. In others, the exemption is granted to persons who are housekeepers or heads of families, and in others still, like the statute of this Territory, the exemption is to the head of the family. Where the exemption is of a family homestead and the exemption is to the family, it would not be material to inquire in what member of the family the title to the property was vested, as it would be exempt from sale under process against or from the enforce- ment of sale to satisfy the debt due from any member of the family; but where the exemption is to a particular individual, as the head of the family or the housekeeper, it would be idle to argue that the statute did not con- template that the property thus to be exempted should be the property of the individual thus designated. It could not exempt any other person's property from sale on account of his debts or liabilities, because the prop- erty of such other person was not subject to the pay- ment of such debt; nor could it be intended to exempt the property of other persons from liability and sale for their own debts, because the exemption is personal to such householder or head of the family, and it would be

meaningless unless it was intended to exempt to him some property right which otherwise might be taken from him in satisfaction of his debts and liabilities.

By § 2861, of said Statutes of 1890, it was provided:

"That eighty acres of the homestead upon which the dwelling house is located shall not' be subject to mortgage, and any mortgage, either legal or equitable, which does not leave unincumbered eighty acres, according to the United States survey, containing the dwelling house, shall be null and void, except for the excess of said eighty acres."

Without intending to intimate herein our views as to whether this provision, in any respect, applied or could apply to a dwelling house and lot in a city, but for the purposes of this case, conceding that it was the intention of the legislature to prohibit the mortgaging of such property, the question must be determined whether the property in controversy in this case was a homestead, exempt under the provisions of this act. The record shows the title of the property at the time of the execution of the mortgage to have been in E. T. Wood, who was then living with her husband, the defendant, W. J. Wood. If the mortgage was valid at the time it was executed, no subsequent change of the law, or of the condition of the parties or occupancy of the premises, could render it invalid. The debts and obligations secured by the mortgage sought to be enforced in these proceedings was the debt and obligation of the defendant, E. T. Wood, the owner of the property mortgaged. The property may have been used as a homestead by the family, but the exemption of the statute is not to whoever may be the owner of property thus used, but it is to the "*head of the family.*" If there was no such statute there would be no quer..ion that this property is liable

to and might be sold to satisfy this mortgage. To bring this property within the exemption of the statute, we must hold either that the wife was in this case the head of the family, or that a husband may claim as a personal exemption a homestead in his wife's separate property. To hold the latter, would be to extend the statute beyond its terms and to give to it a meaning not to be derived from its language by the ordinary rules and canons of interpretation; and to hold the former, that the wife was the head of the family, simply because she owned property that gave the family a shelter or assisted in its support, would be to reverse the common understanding of mankind for hundreds of years, and the almost universal interpretation of the courts for a like period.

This court is not inclined to give a forced or unnatural construction to a statute where such construction can only have the effect to deprive a party of the right to recover for a debt contracted in good faith and which, by every rule of morals and good conscience, ought to be paid.

To give to this statute the interpretation and force contended for by defendants in error would be to make of it an engine of fraud and injustice. If the contention of defendants in error were to prevail, then, as this statute reserves to the head of the family exempt from attachment or execution or forced sale all implements of husbandry used upon the homestead and a certain number of horses, work cattle, cows, and other articles of personal property used by the family, then it would also be held that if the wife had credit and should purchase implements of husbandry, horses, oxen, cows, or such other personal property and permit the same to be used by the husband, they would be exempt from seiz-

ure or sale for the debts of the wife, and we cannot think that it was the intention of the legislature that such should be the effect of the statute.

In the case of *Davis v. Dodds*, 20 Ohio State, 473, it was held that where real estate of the wife held by her as her separate property is occupied by her husband as a family homestead, he is not the owner of such homestead within the meaning of the statute relating to the exemption of property from execution. An in *Turner et al. v. Argo et al.* 14 S. W. Rep. 930, it was held by the supreme court of Tennessee that under the statute of Tennessee exempting a homestead to the head of a family, a wife is not entitled to a homestead out of her own lands, nor is a husband entitled to a homestead in lands belonging to his wife. In that case the court say:

"The lands belonged to Mrs. Argo. The law provides for the exemption of a homestead to each head of a family. In law, though it may be otherwise in fact, the husband is the head of the family. She is not therefore entitled to homestead out of her own lands, nor, as contended in argument, is the husband entitled to homestead in lands belonging to the wife."

In *Van Doran v. Marden*, 48 Iowa, 186, the court held that the husband is the head of the family within the meaning of the statute exempting from execution certain property with which he habitually earns his living. Such property belonging to the wife before her marriage and used for the family support, is not exempt from execution levied under a judgment against her.

In that case the plaintiff was the owner of certain horses used by her husband for the support of the family, composed of himself, wife and her children. A judgment was recovered against plaintiff, and the horses

were seized upon execution issued thereon. She claimed that they were exempt from seizure under § 3072, of the Code, which provided that a debtor who is the " head of a family " may hold free from levy the team with which he habitually earns his living. Plaintiff insisted that she was the head of the family and therefore within such provision. In the opinion the court says:

"Is the plaintiff 'the head of the family' within the meaning of this statute? It is not claimed that the wife is generally regarded as the head of the family, but that in this case where she is the owner of property which, if held by the husband, would be exempt from execution, she is within the provision of the statute, and is to be regarded as the head of the family. Whether the plaintiff is to be so regarded, is a question of law and not of fact. The term 'head of the family' is used in reference to the relation existing between the members of the family as recognized by law and the usage of society. There may be a head of the family when there is no marriage relation existing. When, however, marriage relation does exist, the headship of the family cannot depend upon the circumstances of property held by the parties. If this were so, the question involving the headship of the family would be one of fact and never of law. That it is a question of law, when the husband is resting under no disability, we think cannot be doubted. One reason and only one for this conclusion need be given. It is this: The universal sentiment of the people is, and has been for ages, that the husband is the head of the family. The term was used by the legislature in the statute in question in its universally accepted significance."

In *Whitehead v. Tapp*, 69 Mo., the court held that "any man who has a wife is the head of a family within the meaning of the homestead act." And in *Brown v. Brown's administrator*, 68 Mo. 388, the same court held that, "while a marriage *de jure* exists, the husband is the head of the family."

The only authorities. which· we have been able to find which even apparently support a contrary doctrine to that of the cases above cited, are *Broome v. Davis*, supreme court of Georgia, 13 S. E. 749, and *McPhee v· O'Rourke*, 15 Pac. Rep. 420. In the former of these cases Broome, as head of a family, was the owner of the homestead, consisting of 167 acres of· land in Green county, in the state of Georgia. On July 19, 1870, this homestead was exchanged, with the approval of the ordinary,· under the laws then in force, to one Tappan, for a tract of land in the same county, containing 128.6 acres, and the deed from Tappan was made to Mrs. Broome. On February 2, 1882, she executed a mortgage on the last named tract to C. A. Davis, to secure a note given by her on that date, to Davis, due October 1, 1882. At the time of the exchange of land, Broome went into possession of the 128.6 acres as trustee of his wife and minor children and has remained ever since. At the time of the litigation Broome was still living, as also some of the minor children. The mortgage of Davis was regularly foreclosed and levied on the land, and said land was claimed by Broome as trustee of his wife and minor children. The trial court held the property subject to the mortgage. The supreme court, on appeal, reversed the trial court, but upon a principle entirely distinct from the one at bar. The Georgia court holding it to be settled law that property paid for in full with other property previously set apart in due and proper manner, under the homestead and exemption law, takes the place of the latter and is impressed with a homestead character.

In *McPhee v. O'Rourke*, it appears that the statute of Colorado concerning homesteads provided that every householder, being the head of a family, shall be entitled

to a homestead exempt from execution, attachment, etc. Mrs. O'Rourke was the owner of a certain house and lot in the city of Denver used as a family residence; that the premises were occupied by her husband, herself and children. The property was levied upon and sold under an execution issued upon a judgment obtained against her and her husband jointly. She brought an action to set aside such sale on the ground that she was entitled to hold such property exempt from seizure or sale upon any execution or process, she being a householder, being the head of a family, and such property having been designated as a homestead.. The opinion in the case was by the supreme court commission, and upheld the contention of Mrs. O'Rourke. The reasoning of the commissioners, by which the exemption was upheld, being:

"That when the wife is the owner of the property occupied as the home of the family she is the only one capable of investing it with the exemption character provided by the statute. Under our statute the married woman never did occupy the dwarfed position that afflicted her under the common law. Since the act of our legislature of 1874, the married woman has been without disability concerning her property and property rights; and, at the time of the passage of the homestead act in 1868, she owned and controlled all property she brought to the marriage, independent of her husband; had power to carry on business in her own name, to sue and be sued as if single, and to acquire property by her earnings and business, and to hold the same as if single. So we conclude that, in the nature of things and in the legislative mind, the husband and wife both possess the character of a householder and head of the family, at leas⁺ to the extent to enable either of them owning the home they occupy as such to designate it as a homestead."

This reasoning is fully answered by the supreme court of Iowa in *VanDoran v. Marden, supra,* wherein the court, construing a statute similar to the Colorado stat-

ute, in relation to the emancipation of the wife from the rules of the common law and her changed status as to property and other rights, say:

"Code §2202 clothes the woman with the same right and authority touching her own property as is possessed by the husband over property owned by him. But this provision bestows rights; it does not create exemptions, which only exist under explicit provisions. A consideration, which we may mention here, gives strength to our view of the case. If, when the wife holds property, she is the head of the family, the husband must be deposed of his headship, or the family will have two heads. The first position cannot be admitted. The second is contrary to reason, for in that case the property of each head would be exempt, and thus there would be a double exemption, which is surely not contemplated by the statutes."

The reasoning of the Colorado commissioners would make the headship of a family a question of fact and not of law; would make it to depend upon property and other conditions as uncertain as the varying conditions of different families.

We know of no legislation or any adjudication other than the Colorado case cited, which assumes to change the relation of husband and wife, and parents and children, so as to give the headship of the family to whatever member of the family may for the time being, be the owner of the property which shelters the family or which may be the source of its income and support. So long as the relation of husband and wife continues to exist in fact, the husband is the head of the family. Upon him devolves the duty of the support of the family. They are dependent upon him in law. That duty can be enforced by law. The law provides machinery to compel him, by reason of his headship, to provide such support. It would be an anomalous position to assume

that the wife while living with the husband, should be regarded by the law as the head of the family; that the husband was dependent upon her; that she owed him the duty of support, and yet, the law provide no machinery to enforce against her the performance of such duty.   And it is still more anomalous to assume that there can be two equally responsible heads to the same organization, especially to an organization occupying the relations of those of the family.

We do not overlook the purposes for which homestead laws are enacted; that they are enacted for the conservation of the family, for the benefit of the family, but still more for the benefit of the state which has its foundation and security in the family, nor do we deny that the state may determine what property shall be dedicated to the family and secured as a homestead by reasonable rules against alienation or incumbrance or exempted from any species of forced sale, but all such laws and rules being in derrogation of the common law and in derrogation of the rights of creditors, the extent of such sequestration and the property that may thus be withdrawn from the payment of the just debts of the owner, should be clearly defined in the statutes, and it is not for the court to enlarge such statute or to make property subject to such exemption that is not reasonably clearly exempted by the statute, or to extend such exemption to others than those that are explicitly designated in the statute.

For the reasons stated, we are of the opinion that the husband alone, while living with a family, is, under our statute, the head of the family; that that statute only exempts from seizure and sale, to satisfy debts, property owned by such husband; that a wife who has mortgaged her separate property, though it may be the home of the

family, cannot claim such property as exempt from sale, to satisfy her debt; that there is no homestead exemption to the wife when she is not the head of the family.

That the court below erred in finding and adjudging that the premises in question was the homestead of the defendant, and that the mortgage filed in said cause was not a lien on said premises; that said mortgage was null and void, and in refusing to enter a judgment for the foreclosure of said mortgage.

The judgment of the court below is therefore reversed and remanded with instructions to the court below to enter judgment therein in accordance herewith.

Scott, J., who presided in the court below, not sitting; all the other Justices concurring.