## KRAUSS *et ux.* v. POTTS *et al.*

No. 2412. Opinion Filed September 9, 1913.

(135 Pac. 362.)

1. • MORTGAGES—Deed as Mortgage — Necessity of Foreclosure— Right of Redemption. An instrument purporting to be an absolute conveyance of real estate, but intended to be defeasible or as security for the payment of money, is deemed a mortgage, and must be recorded and foreclosed as such.

    (a) The holder of a deed absolute, taken as a security for a debt, can only acquire title by a foreclosure of his mortgage, and any agreement of forfeiture is void.

    (b) Any person having an interest in the mortgaged real estate may redeem from such deed.

2. SAME—Necessity of Recording Entire Instrument. Every instrument explanatory of any deed or other writing purporting to be a conveyance, but intended to be defeasible or as security for the payment of money, shall be deemed a part thereof, and must be filed and recorded therewith; and, unless such

instruments are so filed, and recorded together, they and each of them shall have no other effect than an unrecorded mortgage, and the recording of the principal instrument shall secure no rights to the holder thereof.

3.   **SAME—Deed as Mortgage—Rights of Purchaser—Assignee.** Any person purchasing or taking any security against real estate in good faith and without notice from one holding under an instrument purporting to be a conveyance, but intended as security for the payment of money, which instrument has been duly recorded without any other instrument explanatory thereof, shall be protected to the extent of the purchase price paid, or actual outlay occasioned, with lawful interest, against all persons except those in actual possession at the time of such purchase' or outlay.

(a) Any conveyance, other than as above provided, by one holding under an instrument purporting to be a conveyance, but intended as security, shall be deemed and treated as an assignment and transfer of the mortgage rights of any indebtedness due the maker thereof.

(Syllabus by the Court.)

*Error from District Court, Tillman County;*
*J. T. Johnson, Judge.*

Action by David Krauss and wife against James M. Potts and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded, with instructions.

*Geo. T. Webster* and *R. E. Weathers,* for plaintiffs in error.

*H. P. McGuire* and *Lewis P. Mosier,* for defendants in error.

WILLIAMS, J.   The plaintiffs in error, as plaintiffs, sued the defendants' to have a certain deed, absolute in form, executed and delivered by them to one Geo. J. Hetzel, together with a contract of defeasance, executed at the same time, to secure a debt of $1.800 declared a mortgage, and that they be permitted to redeem against the defendant James M. Potts, the grantee of Eva M. Hetzel (the grantee of said Geo. J. Hetzel), and the Central Investment Company, mortgagee of said Hetzel, and Mary K. Hammond, its as-

signee, and for rents and other equitable relief. The defendant Potts, by way of answer, pleaded that he purchased in good faith from Eva M. Hetzel, a grantee of said Geo. J. Hetzel, without notice of the rights of the plaintiffs. The Central Investment Company by answer pleaded a mortgage from the said Geo. J. Hetzel to secure a loan of $2,200, averred to have been taken for value in due course, and without any notice of any clouds on the title, and that said mortgage had been duly assigned to Mary K. Hammond. Mary K. Hammond by answer claimed under said mortgage without notice of any prior rights. The plaintiffs by reply denied the allegations of said answers. Upon the issues as framed the cause was tried before the court without the intervention of a jury. Findings of fact and conclusions of law were properly requested of the court. Such having been made and judgment rendered, the plaintiffs in due time filed their exceptions thereto and their motion for a new trial. The action of the court in overruling the same is now before this court for review.

The journal entry and decree is entered as follows:

"On this 26th day of March, 1910, the same being a regular term day of said court, the above action came on for trial, the plaintiffs being present and represented by their attorneys, Geo. T. Webster and R. E. Weathers, and the defendant James M. Potts being present and represented by his attorneys, McGuire & Caudill, and the Central Investment Company and Mary K. Hammond being represented by D. S. Dill, their attorney, and, issues being joined, each party announced ready for trial, and each waived trial by jury, and thereupon the plaintiffs requested the court in writing to find the facts and conclusions of law, and to separately state them, and thereupon each party, through his attorney, made a statement, and thereupon the plaintiffs introduced their evidence, and thereupon it was agreed between all parties that the mortgage and notes of the Central Investment Company, now owned by Mary K. Hammond, defendant, should be held and adjudged a first lien against the land involved therein and hereafter more particularly described, and thereupon the court announced that it would take the case under advisement,

and render its decision at the October, 1910, term, each party to make arguments, and now, after arguments have been made, and the court being duly advised, makes the following findings of fact and conclusions of law:

"(1) That David Krauss entered the following described tract of land as his homestead under the United States land laws, to wit, the southeast quarter of section 28, in township 1 south, range 17 W., I. M., Tillman county, state of Oklahoma, and on the 29th day of May, 1905, received a patent for said land.

"(2) That on said date he had a wife, Pauline Krauss, and several minor children, who were living with him upon said land.

"(3) That on the 24th day of January, 1905, said David Krauss and Pauline Krauss gave a mortgage upon said land for $700 to the Oklahoma Farm Mortgage Company.

"(4) That on the 10th day of December, 1906, David Krauss sold to Geo. J. Hetzel, for a valuable consideration, which was paid, all his interest in the land in question, and by a deed joined in by his wife, Pauline Krauss, conveyed the entire tract to the said Geo. J. Hetzel, it being agreed and understood by all the parties at the time that the interest conveyed was a one-half interest, and that the other one-half interest was the property of Pauline Krauss; and at the same time and as a part of the same transaction, said parties entered into a written agreement, giving to the said Geo. J. Hetzel full control of the premises and giving to Pauline Krauss an option to rebuy the same at any time before January 1, 1908, which option she never afterwards asserted, but by her conduct clearly waived; that said deed was recorded in the office of the register of deeds, but that said written agreement between said parties was not recorded.

"(5) That soon thereafter David Krauss went on an extended trip to Germany, remaining away three months, returning in April, 1907, and thereupon at once went to New Mexico, where he remained until September, 1909; Pauline Krauss and the minor children during said time living on the land in question up to December 25, 1908.

"(6) That a short time after the transaction of December 10, 1906, and after David Krauss had gone to Germany, said Geo. J. Hetzel and Pauline Krauss entered into an oral

agreement, whereby said Geo. J. Hetzel gave to Pauline Krauss his note for $1,500 and $200 in cash, less taxes due upon said land and a small lumber bill owing by Pauline Krauss, which said Geo. J. Hetzel paid, in consideration of said Pauline Krauss turning over to him said land under the deed of December 10, 1906, which was consummated; that said $1,500 has never been paid, but has since been merged into a judgment in favor of Pauline Krauss and against Geo. J. Hetzel.

"(7) That on the 4th day of January, 1907, said Geo. J. Hetzel mortgaged said land to the Central Investment Company for $2,200 and for $220 commission note mortgage.

"(8) That said Geo. J. Hetzel assumed the $700 mortgage to the Oklahoma Investment Company, and paid same.

"(9) That on February 21, 1907, said Geo. J. Hetzel made a deed of said land to Eva M. Hetzel for an expressed consideration of $5,500, she assuming the $2,200 mortgage and the $220 commission note mortgage, but that no consideration was paid by Eva M. Hetzel to said Geo. J. Hetzel for said land.

"(10) That on March 16, 1908, Eva M. Hetzel conveyed said land by warranty deed to J. M. Potts for an expressed consideration of $4,500, he assuming the $2,200 mortgage and the amount due on the commission note mortgage and paying $2,100 to Wash Hudson as the agent of Eva M. Hetzel.

"(11) That at the time of the conveyance of said land by Eva M. Hetzel to J. M. Potts, Pauline Krauss and her minor children were occupying said land as tenants of Geo. J. Hetzel.

"(12) That the reasonable rental value of said land is $400 per year, and that J. M. Potts has been in possession of said land since March 16, 1908, and is now in possession.

"(13) That the Central Investment Company still holds a mortgage of $2,200 on said land, and one commission note of $44, due January 1, 1911, and one of $44, due January 1, 1912, are still unpaid.

"(14) That J. M. Potts at the time he purchased said land had no actual notice of any claim of any rights, equities, and estate of David Krauss in and to the same.

"(15) That no part of the consideration paid by Geo. J. Hetzel to David or Pauline Krauss has ever been returned.

"(16.) That David Krauss and Pauline Krauss were divorced after the commencement of this action, and the property rights between said parties were not adjudicated."

"Conclusions of Law.

"(1) That on December 10, 1906, the land above described was the homestead of David Krauss and Pauline Krauss, plaintiffs herein, and their family, and that the record title thereto was in David Krauss by and through a patent from the United States government.

"(2) That the deed of conveyance of the land above described to Geo. J. Hetzel by David Krauss and Pauline Krauss, plaintiffs, made on December 10, 1906, and the written contract of redemption to Pauline Krauss, signed by Geo. J. Hetzel and plaintiffs, vested in said Geo. J. Hetzel an estate in fee simple to an undivided one-half in said land; the same being the interest of David Krauss in said land.

"(3) That the deed of conveyance dated December 10, 1906, and the written contract of redemption to Pauline Krauss, vested in Geo. J. Hetzel, the legal title to the undivided one-half interest of Pauline Krauss in the said tract of land, but the equitable or superior title to the same remained in Pauline Krauss, and the said Geo. J. Hetzel and Pauline Krauss thereby became joint owners and tenants in common of said tract of land, share and share alike, or each owning an undivided interest of one-half therein.

"(4) That Pauline Krauss, plaintiff, forfeited and waived her right to repurchase the interest of Geo. T. Hetzel in said tract of land by reason of her sale to Geo. J. Hetzel of her interest therein and the acceptance of $200 cash and his note for $1,500 in full payment of her interest in said land.

"(5) That the deed of conveyance dated December 10, 1906, and the contract of redemption gave to Pauline Krauss alone the right to repurchase the interest of Geo. J. Hetzel in said land at any time before January 1, 1908.

"(6) That J. M. Potts, the defendant, purchased the land in question from Eva M. Hetzel, grantee of Geo. J. Hetzel, in good faith and for a valuable consideration, and without notice of any of the rights, equities, or claims of plaintiffs,

or either of them, and by reason thereof the said J. M. Potts is the owner in fee simple of the tract of land above described as against the above-named plaintiffs, or either of them, and is entitled to the possession thereof."

The court rendered judgment upon said findings, adjudging the title to said land in favor of said Potts, and sustaining the mortgage in favor of the said Mary K. Hammond as a lien thereon.

Pending the determination of said cause in the lower court the said Pauline Krauss was divorced from her husband, David Krauss, without their property rights being adjudicated.

Plaintiffs in error in their brief contend: (1) That the deed to Geo. J. Hetzel and the defeasance contract, in the light of the evidence explanatory thereof and admitted, constitute a mortgage; (2) that the deed from Geo. J. Hetzel to Eva M. Hetzel, as well as the mortgages of $2,200 and $220 to the Central Investment Company, amount to equitable assignments of said mortgage; (3) that the deed from Eva M. Hetzel to J. M. Potts and the assignment by the Central Investment Company to Mary K. Hammond are each assignments of the mortgage interest of Geo. J. Hetzel, equitable mortgages; (4) that J. M. Potts is not an innocent purchaser, but had notice of the rights, equities, and estate of David Krauss and Pauline Krauss and made the purchase in bad faith, as a speculation in a bad title; (5) that if, however, this court should find that J. M. Potts is a *bona fide* purchaser, and the Central Investment Company and Mary K. Hammond are *bona fide* mortgagees, the plaintiffs have the right to redeem the land by paying to each of the said parties the amount of their outlay.

The written agreement and deed referred to in finding 4 are as follows:

"This agreement made and entered into this 10th day of December, 1906, by and between Geo. J. Hetzel, party of the first part, and David Krauss and Pauline Krauss, parties of the second part, all of Comanche county, Oklahoma; Witnesseth, that in consideration of five thousand dollars, party

of the first part has this day bought the southeast quarter of section 28, township 1 south, of range 17 W., I. M., Comanche county, Oklahoma, from said David and Pauline Krauss, his wife, parties of the second part. Furthermore that the parties of the second part fully understand all the terms and conditions of said sale and that all the conditions are embodied in this contract. In consideration of the convenants herein mentioned said first party is to let second party have full control and management of the above described premises and also to let party of the second part have the option to rebuy the same at any time between now and January 1, 1908, provided they buy the place themselves and not through or for any other person, persons or corporations. Second party hereby agrees to pay for the house just finished on the above described place within the next 90 days from above date and further to take up the interest coupons and principal note as they may come due on the mortgage now against the place, and also to pay all taxes as they may come due. It is further agreed if the parties of the second part fail or refuse to comply with any of the covenants above named, then it is hereby agreed that all of the above convenants shall be void and of no force or effect, and the said second party shall merely have the option to remain on the above described premises as a tenant and shall deliver to said first party as rental two-fifths of all the crops raised, cotton to be delivered at the gin free of all expense, said second party to cultivate all the tillable land, otherwise first party to have complete control and possession and rent to whomever he pleases, and if said second party fails to comply with the above covenants, they hereby agree to give peaceable possession within 90 days from the time they cease farming the place to the satisfaction of the party of the first part. It is expressly agreed hereby that the party of the first part binds himself, his heirs, executors, administrators and assigns."

### DEED.

"Know all men by these presents: That David Krauss and Pauline Krauss, husband and wife, of Comanche county, territory of Oklahoma, parties of the first part, in consideration of the sum of five thousand dollars, in hand paid, the receipt of which is hereby acknowledged, do grant, bargain, sell and convey unto Geo. J. Hetzel, of Comanche county, territory of Oklahoma, party of the second part, the fol-

lowing described real property and premises, situated in Comanche county, territory of Oklahoma, to wit: Southeast quarter of section 28, in township 1 south, of range 17 west, I. M., together with all improvements thereon and the appurtenances thereunto belonging, and warrant the title to the same. To have and to hold said described premises unto the said party of the second part, his heirs and assigns forever, free, clear and discharged from all grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature, except one mortgage for seven hundred dollars."

1. Section 12, c. 8, of the Act of March 12, 1897 (section 1196, Comp. Laws 1909 [Rev. Laws 1910, sec. 1156]), entitled "An act regulating the conveyance of real property and mortgages thereon and contracts relating thereto, and repealing article 1, of chapter 21, entitled 'Conveyances,' and chapter 82, entitled 'Transfers,' of the Oklahoma Statutes of 1893, and other acts and parts of acts," provides:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such."

By virtue of this section the deed in question when considered in connection with the written agreement, constituted a mortgage. *Wagg v. Herbert et al.,* 19 Okla. 525, 92 Pac. 250; *Balduff et ux. v. Griswold,* 9 Okla. 438, 60 Pac. 223; *Weiseham v. Hocker et al.,* 7 Okla. 250, 54 Pac. 461.

Section 12, *supra,* is construed in *Balduff et ux. v. Griswold, supra.* In that case it is held that:

"The holder of a deed absolute, taken as security for a debt, can only acquire title by foreclosure of his mortgage, and any agreement of forfeiture is void. Any person having an interest in the mortgaged real estate may redeem such a deed."

The record discloses that Geo. J. Hetzel, the grantee in the deed and a party to the written contract, was an attorney for each of the plaintiffs, to wit, David Krauss and Pauline Krauss; that he, as well as they, were Germans, they having confidence in his ability and integrity, and they went to him because he was

a fellow countryman; that he got this land, which exceeded in value $5,000, for an actual outlay of $1,800 paid to David Krauss, $90 to Pauline Krauss, and $810 in debts assumed, and then, having mortgaged it to the Central Investment Company for $2,400, conveyed it to Eva M. Hetzel for an expressed consideration of $5,500, she assuming the $2,200 mortgage and the $220 commission note and mortgage, but no additional consideration was paid by her to the said Geo. J. Hetzel.

In *Wagg v. Herbert et al., supra,* it is said:

"Where confidential relations and the means of oppression exists, the scrutiny is severer than in cases of a different character. The form of the instruments employed is immaterial. That the mortgagor knowingly surrendered and never intended to reclaim is of no consequence. If there is vice in the transaction, the law, while it will secure to the mortgagee his debt, with interest, will compel him to give back that which he has taken, with unclean hands. Public policy, sound morals, and the protection due to those whose property is thus involved, require that such be the law."

Having reached the conclusion that the deed constituted a mortgage, and the trial court having found that the said J. M. Potts, Central Investment Company, and Mary K. Hammond were purchasers or holders for value in good faith, it becomes essential to determine whether the plaintiffs are entitled to redeem as against them. Obviously as to the Central Investment Company and Mary K. Hammond, who hold mortgages, there is no question but that plaintiffs may redeem, but may they redeem as against Potts, the innocent purchaser? Section 13, of the Act of March 12, 1897, (section 1197, Comp. Laws 1909 [Rev. Laws 1910, sec. 1157]), is as follows:

"Every instrument explanatory of any deed or other writing purporting to be a conveyance, but intended to be defeasible or as security for the payment of money, shall be deemed a part thereof, and must be filed and recorded therewith; and unless such instruments are so filed and recorded together, they and each of them shall have no other effect than an unrecorded mortgage, and the recording of the principle

[principal] instrument shall secure no rights to the holder thereof."

Section 14 of the same act (section 1198, Comp Laws 1909 [Rev. Laws 1910, sec. 1158]), also provides:

"Any person purchasing or taking any security against real estate in good faith and without notice from one holding under an instrument purporting to be a conveyance, but intended as security for the payment of money, and which instrument has been duly recorded without any other instrument explanatory thereof, shall be protected to the extent of the purchase price paid or actual outlay occasioned with lawful interest, against all persons except those in actual possession at the time of such purchase or outlay."

Section 15 of the same act (section 1199, Comp. Laws 1909 [Rev. Laws 1910, sec. 1159]), also provides:

"Any conveyance, other than as above provided, by one holding under an instrument purporting to be a conveyance, but intended as security, shall be deemed and treated as an assignment and transfer of the mortgage rights of and indebtedness due the maker thereof."

The foregoing statutes appear to abridge the rights of the innocent purchaser for value in such cases to the amount of the outlay with interest. *McNeil v. Jordan,* 28 Kan. (2d Ed.) 7. As to the wisdom of such a statute we have nothing to say. Probably the conditions that existed in the territory of Oklahoma during the first ten years of its existence induced its Legislature to pass this act, which has been continued in force in the state, and must be given effect by the courts as long as it remains a statute. We believe that the statutes hereinbefore set out were intended by the Legislature to cover such cases as the one at bar.

2. Under section 15, *supra,* the defendant in error Potts must be treated as the assignee and holding the mortgage rights under the instruments executed by Krauss and wife to Geo. J. Hetzel, and also the mortgage executed by said Hetzel to the Central Investment Company and afterwards transferred to Mary K. Hammond. As to the effect of the divorce between David Krauss and his wife, Pauline Krauss,

without an adjudication of their property rights therein, it is not essential to determine that question in order to dispose of this proceeding in error. But see *Goldsborough et al. v. Hewitt,* 23 Okla. 66, 99 Pac. 907, 138 Am. St. Rep. 795.

3. Section 1627, Stat. Okla. 1893, is as follows:

"All instruments conveying or affecting the title to the homestead exempted by law to the head of a family, shall be void unless the husband and wife sign and acknowledge one and the same joint instrument conveying the same."

Section 1628, *Id.,* also provides:

"All instruments, other than leases for a period of one year, affecting the title of realty occupied as the homestead of a family shall be void unless the husband and wife join in the execution and acknowledge the instrument conveying the same."

The Legislature of the territory of Oklahoma, in 1897, passed an act, entitled "An act regulating the conveyance of real property and mortgages thereon and contracts relating thereto, and repealing article 1, of chapter 21, entitled 'Conveyances,' and chapter 82, entitled, 'Transfers,' of the Oklahoma Statutes of 1893, and other acts and parts of acts." Sess. Laws 1897, pp. 92-102. Sections 1627 and 1628, Statutes of Oklahoma Territory of 1893, are contained in chapter 21, article 1, entitled "Conveyances," as the same appear in the Statutes of Oklahoma Territory 1893. Obviously, said sections 1627 and 1628 were expressly repealed.

*Goldsborough et al. v. Hewitt,* 23 Okla. 66, 99 Pac. 907, 138 Am. St. Rep. 795; *Cordray v. Morgan,* 21 Okla. 574, 95 Pac. 761; and *Goodwin v. Kraft,* 23 Okla. 329, 101 Pac. 856, hold that under said statutes an interest in the homestead of the family could not be conveyed unless the husband and wife sign and acknowledge one and the same joint instrument conveying the same.

Section 4, c. 8, Sess. Laws 1897, p. 93 (section 880, Wilson's Rev. & Ann. Stat. 1903; section 1143, Rev. Laws 1910), provides:

"* * * And no deed, mortgage or contract relating to the homestead exempt by law, except a lease for a period of not exceeding one year, shall be valid unless in writing, and duly subscribed by both husband and wife, where both are living and not divorced, except to the extent hereinafter provided."

Section 5, of said act provides:

"Where the title to the homestead is in the husband, and the wife voluntarily abandons him for a period of one year, or from any cause takes up her residence out of the territory, he may convey, mortgage, or make any contract relating thereto without being joined therein by her; and where the title to the homestead is in the wife and the husband voluntarily abandons her, or from any cause takes up his residence out of the territory for a period of one year, she may convey, mortgage, or make any contract relating thereto without being joined therein by him." (Section 882, Wilson's Rev. & Ann. St. 1903 [Rev. Laws 1910, sec. 1145]).

Section 6, of said act also provides:

"If the husband shall make any deed, mortgage or contract relating to the homestead without being joined therein by his wife he shall be concluded thereby, and the same can only be avoided by the wife; and if the wife shall make any deed, mortgage or contract relating to the homestead without being joined therein by the husband, she shall be concluded thereby and the same can only be avoided by the husband; and in either case, the husband or wife entitled to avoid any such deed, mortgage or contract shall be concluded by a failure after due notice of any suit in a court of competent jurisdiction, to set forth his or her right, title or interest therein." (Section 883, Wilson's Rev. & Ann. St. 1903.)

Section 1, chapter 18, of the Session Laws of Oklahoma Territory 1905 provides:

"That section 1, chapter 34, of the Revised Statutes of Oklahoma, 1893, be and is hereby amended to read as follows: (2844) Section 1. The following property shall be reserved to every family residing in the territory exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: First, the homestead of the family, which shall consist of the home of the family, whether the title to the same shall be lodged in or owned by the husband or wife. * * *"

Section 2844. of the Statutes of Oklahoma Territory, which was amended by said act, read as follows:

"The following property shall be reserved to the head of every family residing in the territory exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided: First. The homestead of the family."

Under the law as it existed in the territory of Oklahoma prior to the passage of the above act by the Legislature of Oklahoma Territory in 1905, the title or ownership to the property used by the family as a home to acquire the status of a homestead was required to be in the husband, as he was declared to be the head of the family. If it was in the wife, it was not a homestead, though occupied by the family. *Cordray v. Morgan*, 21 Okla. 574, 95 Pac. 761; *McGinnis v. Wood*, 4 Okla. 499, 47 Pac. 492; 2 Crawford's Oklahoma Digest, p. 1321.

Sections 880, 882, and 883, Wilson's Rev. & Ann. St. 1903 (Rev. Laws 1910, secs. 1143 and 1145), appear not to have been repealed by section 1, chapter 18 of the Session Laws of Oklahoma 1905, *supra*. Section 1, article 12 (section 302, Williams' Ann. Const. Okla.), defines a homestead. Section 2 (section 303, Williams' Ann. Const. Okla.) of the same article is as follows:

"The homestead of the family shall be, and is hereby protected from forced sale, for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law: Provided, nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on a foreclosure to satisfy any such mortgage."

It is not essential to determine whether sections 882 and 883 of Wilson's Rev. & Ann. St. 1903 (Rev. Laws 1910, sec. 1145), *supra*, are repugnant to said section 2, article 12, of

the Constitution of this state, as the instruments under consideration were executed prior to the erection of the state.

The title to the homestead in question being in the husband subject to the mortgage lien thereon, the wife could not convey the same without being joined by the husband, as section 882, Wilson's Rev. & Ann. St. 1903 (Rev. Laws 1910, sec. 1145), provides that where the title is in the husband, and the wife voluntarily abandons him for a period of one year, or for any cause takes up her residence out of the territory (state), then the husband may make a mortgage or any contract relating thereto without being joined therein by her. If the wife had abandoned the husband and the husband had remained upon the homestead, then he would have come within the terms of this clause, as the title was in him, the subsequent clause relating to where the title to the homestead is in the wife.

The arrangement made between Hetzel and Pauline Krauss being in parol, section 883 of Wilson's Rev. & Ann. St. 1903 (Rev. Laws 1910, sec. 1145), does not apply. It is there provided that, "if the wife shall make any deed, mortgage or contract relating to the homestead without being joined therein by the husband, she shall be concluded thereby and the same can only be avoided by the husband." The term "deed, mortgage, or contract relating to the homestead without being joined therein by the husband" contemplates a deed, mortgage or contract in writing. Therefore the verbal agreement between Pauline Krauss and said Hetzel did not have the effect of extinguishing the title of the plaintiffs in error in said land.

The case is reversed and remanded, with instruction to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.