**EDMUNDSON et al. v. STATE ex rel. JOHNSON, State Bank Com'r.**

No. 27385. Nov. 2, 1937.

George L. Zink, for plaintiffs in error.

James P. Hughes and Tolbert & Tolbert, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the district court of Kiowa county.

The State Bank Commissioner filed suit against Harvey T. Edmundson, Walter H. Edmundson, and Alpharetta M. Edmundson, stockholders in the insolvent First Bank of Roosevelt, praying for a judgment for spe-

cific performance of a contract entered into between the plaintiff and defendants, and for an order requiring the defendants to execute and deliver to the plaintiff a valid conveyance of certain real estate and all personal property and collateral, referred to and made a part of the contract entered into, relative to the liquidation of the insolvent First Bank of Roosevelt, referred to hereinafter as the First Bank. The issue being joined by the answer of defendants, the cause was tried to the court and 'a judgment rendered for plaintiff, canceling mortgage to secure $25,000 note and clearing title to real estate securing same and requiring the conveyance of all the property as prayed for, from which judgment defendants have appealed. The parties will be referred to as they appeared in the trial court.

The record discloses that the First Bank of Roosevelt was declared insolvent on the 19th day of September, 1931, and taken over by the State Bank Commissioner for the purpose of liquidation. The defendants were sole owners of the bank, which had a capital stock of $25,000, and for which sum defendants became liable to the Bank Commissioner for the use and benefit of the depositors and creditors.

It is shown that the insolvent bank had borrowed from the First National Bank & Trust Company of Oklahoma City, hereinafter referred to as the First National, the sum of $50,000, and for which the defendants had given their personal note and a mortgage upon a portion of the free assets of the bank, and the defendants executed a mortgage upon a portion of their personal property as additional security.

The defendants had become personally liable to other banks and to individuals for the benefit of the First Bank by reason of having given their personal notes in the approximate amount of $25,000. These amounts, added to the $25,000 stockholder's liability, made defendants personally liable on account of the failed bank in the sum approximately $100,000.

The total liability of the insolvent bank was approximately $407,000. The liability to individual depositors was approximately $160,000.

On December 22, 1931, the Bank Commissioner and the defendants entered into the contract in question relative to the liquidation of the bank 'and were joined therein by the First National in so far as it applied to that bank, and by a majority of the depositors of the bank.

The contract is so lengthy as to prevent us from doing more than giving casual provisions of same.

The contract recites the ownership of the shares of the bank in the defendants, the indebtedness for which the defendants became personally liable by reason of their having executed notes and having placed their personal endorsement upon other and additional notes. The indebtedness of the First Bank and of the defendants to the First National is fully outlined and agreement made concerning same accordingly.

It was further agreed that the "Bank Commissioner accept as agent and/or as trustee for the First National Bank and Trust Company of Oklahoma City and for other creditors of the First Bank of Roosevelt, a pledge of all the collateral, real and personal, described on Exhibit F. attached hereto, said collateral to be held, managed, liquidated and disposed of * * * subject to the conditions hereinafter set forth.* * *" It was further provided that if all the creditors and depositors were paid within three years, the balance of the collateral pledged with the Bank Commissioner was to be redelivered to the defendants, the second parties; that if not paid in full by January 1, 1935, "all of the second parties' control of the security pledged hereunder * * * shall cease and the Bank Commissioner and the First National Bank and Trust Company of Oklahoma City may thereafter deal with all collateral pledged to them * * * exactly 'as though this contract had never been entered into."

The contract further provides that the life insurance policies of W. H. 'and H. T. Edmundson pledged shall be resorted to by the Bank Commissioner and/or the other parties for payment of creditors of the bank and defendants, "only after the exhaustion of all other 'assets and collateral, to the end that such life insurance policies, if in any way possible, will be preserved and redelivered to said second parties." Under the general provisions of the contract, it again stated that if the bank is not liquidated and depositors and creditors paid in full by January 1, 1935, "then all right, title and interest of the second parties in and to any of the property assigned, transferred, conveyed or pledged under the provisions of this agreement, shall terminate as to the

second parties, and the first party, subject to the right of the third party, shall have the absolute right and authority to sell, mortgage or transfer any and all of said property then remaining in his possession or in possession of third party for payment of creditors of the First Bank of Roosevelt."

The question, then, presented is: Did the giving of the right to mortgage, sell and convey, give the right to sell without advertisement or foreclosure? Were the deeds of trust indefeasible instruments and unconditional conveyances, or were they mortgages?

Let us review the nature of the instruments executed in futherance of the agreement in the contract "to mortgage and/or convey to the first party" the real estate described in Exhibit E and the real estate, stocks, and chattels described in Exhibit F.

The defendants on the 5th day of January, 1932, executed six instruments styled "Deed of Trust." The granting clause stated that said parties of the first part (the defendants), in consideration of the covenants and agreements contained in a certain contract dated December 22, 1931, "do by these presents, grant, bargain, sell and convey unto the said party of the second part * * * for the purposes of carrying into effect and satisfying the contract herein referred to . * * *"

The real estate named in the mortgage by defendants to secure the $25,000 note for bank stock obligation was on the same day included in one of the deeds of trust. The mortgage to secure the $25,000 note mentioned had a regular defeasible clause in it and providing for regular mortgage foreclosure upon default.

We think the principal question presented for our consideration here is whether or not these instruments were in fact mortgages, intended to be defeasible in their nature or conditional guaranty conveyed for payment of creditors and depositors of the bank under conditions stated, or were they intended as unqualified conveyances or sales in fee-simple title to the property, real and personal, described therein for purpose of liquidation.

The rule has frequently been stated by this court, that:

"Whether a transaction evidenced by an absolute conveyance will be held to be a sale or only a mortgage must be determined by a consideration of the peculiar circumstances of each case. The form of the conveyance is not conclusive. The intention of the parties is the only true and infallible test. This intention is to be gathered from the circumstances attending the transaction and the conduct of the parties as well as from the face of the written contract." Voris v. Robbins, 52 Okla. 671, 153 P. 120.

The intention of the parties and the real purpose of the contract entered into is fully outlined, and as stated in the contract is, in part, as follows:

"Whereas, it is the desire of all parties hereto, to enter into an agreement whereby so far as possible, all of the creditors and depositors of the First Bank of Roosevelt will be paid in full; and at the same time, however, preserving as many of the assets of said First Bank of Roosevelt as possible for the benefit of the stockholders therein, second parties hereto, and whereas, in order to save the creditors of the said bank harmless and at the same time protect the interest of the second parties hereto as far as possible in the liquidation of the assets of said bank, the second parties hereto are willing, under the conditions hereinafter set forth, to mortgage and/or convey to the first party, the real estate described on Exhibit E attached hereto and made a part hereof, and to also mortgage and/or convey to the Bank Commissioner, subject to the conditions hereinafter set out, the real estate, stock and chattels described on Exhibit F, attached hereto and made a part hereof. * * *"

If "the intention is to be gathered from the circumstances attending the transaction and the conduct of the parties as well as from the face of the written contract," then what were the circumstances, and what was the conduct of the parties in the instant case? The contract entered into, promising to mortgage or convey under conditions stated, was entered into on December 22, 1932, and the conveyances in question were made on January 5, 1932, and at a time when great hopes were entertained by the defendants that the bank would be successfully liquidated and all creditors and depositors paid in full and a balance of the assets of the bank, together with much of their personal security, including their life insurance policies, turned back to them. It was under these circumstances that defendants either mortgaged, pledged, or conveyed their property worth approximately $75,000 in addition to the real estate securing the $25,000 note evidencing their statutory liability on the capital stock of the insolvent bank. Under these existing conditions, would it be expected that the defendants would intentionally make an unconditional sale and

indefeasible conveyance of all of this property? The contract setting out the purposes and conditions of the conveyances to be made must be construed in connection with the conveyances later made and the law authorizing such instruments.

Section 9674, O. S. 1931, provides:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such."

This section of the law has many times received literal construction by this court. In Williams v. Purcell, 45· Okla. 489, 145 P. 1151, this court held:

"An instrument purporting to be an absolute conveyance of real estate, but intended to be defeasible or as a security for the payment of money, is deemed a mortgage, and must be recorded and foreclosed as such."

To the same effect are the holdings of this court in Krauss v. Potts, 38 Okla. 674, 135 P. 362; Worley, Receiver, v. Carter, 30 Okla. 642, 121 P. 669; Beindorf v. Thorpe, 90 Okla. 191, 203 P. 475; Taylor v. Campbell, 139 Okla. 110, 281 P. 243, and many other decisions.

There is another rule that has been adopted by this court and courts of other jurisdictions by which we may determine if the instruments should be construed as an absolute conveyance or a mortgage.

In Voris v. Robbins, 52 Okla. 671, 153 P. 120, this court held:

"Before a deed can be declared to be an equitable mortgage, there must exist a debt, which must be personal in its nature and enforceable against the person independent of the security."

In Worley, Receiver, v. Carter, supra, this court held:

"If there remains a debt for which the conveyance was only a security, and the collections of which may be enforced independently of the security, the whole transaction amounts to a mortgage, whatever language the parties may have used in expressing their agreement."

—and quoted with approval from McNamara v. Culver, 22 Kan. 668, as follows:

"The test is the existence or nonexistence of a debt. And equity looks behind the form to the fact. If the transaction was intended as a loan, if there remains a debt for which the conveyance is only a security, and the collection of which may be enforced independent of the security, equity will hold it a mortgage no matter whether the transaction is evidenced by one or two instruments."

And quoting from Fabrique v. Cherokee & P. Coal & Mining Co., 69 Kan. 733, 77 P. 584, wherein it was said, quoting from Kent's Commentaries (15th Ed.) p. 163, note "d":

"The test of the distinction is this: If the relation of debtor and creditor remains, and the debt still subsists, it is a mortgage."

And quoting from Pomeroy's Equity Jurisprudence, sec. 1193:

"This criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability."

Can it be said, in the instant case, that there was no debt or obligation existing on the part of these defendants when they executed these various deeds of trust. They had borrowed approximately $50,000 from the First National Bank for which they had given their individual paper secured in part by mortgage upon their individual real estate and property. The defendants had executed and delivered their note for $25,000 evidencing their statutory liability on the bank stock. This note was secured with a mortgage on certain of their lands. This mortgage became subject to foreclosure January 1, 1935. There were many other personal obligations against the defendants which the contracts show they had hoped to settle through the liquidation of the bank. Were these obligations all paid and defendants relieved from further obligations when the deeds of trust were executed and delivered? These deeds of trust were not executed and delivered after the three-year period for liquidation had passed and failed and certain rights to the property named in the deeds of trust had been forfeited by the terms of the contract, but executed and delivered in accordance with the terms of the contract and soon after the contract was entered into and the three-year liquidation period had scarcely begun. It cannot be denied that the debts and various obligations due from defendants and for which they were personally responsible still existed against them when the deeds of trust were executed and delivered, and these instruments of conveyance, whether named as mortgages, deeds of trust or deeds, were taken as security for the payment of these debts

and personal obligations, and if, at the end of the three-year period, the liquidation proved to be a success and all indebtedness paid from the assets of the bank, the security or the balance of same could be turned back to the defendants as the contract provided.

Then what were the rights of the plaintiff, with reference to this long list of securities, when the three-year period had expired and the obligations, unpaid, under process of liquidation? It is specifically provided in the contract that:

"* * * If all the creditors of the First Bank of Roosevelt shall not have been paid in full by January 1, 1935, all of the second parties' control of the security pledged hereunder and the employment herein provided for shall cease, and the Bank Commissioner and the First National Bank and Trust Company of Oklahoma City may thereafter deal with all collateral pledged to them by this contract or otherwise, exactly as though this contract had never been entered into."

We note that the contract quoted did not say "property conveyed," but said "security pledged" and "collateral pledged."

In Krauss v. Potts, 38 Okla. 674, 135 P. 362, this court held:

"The holder of a deed absolute, taken as security for a debt, can only acquire title by a foreclosure of his mortgage and any agreement of forfeiture is void"

—followed in Williams v. Purcell, 45 Okla. 489, 145 P. 1151.

A mortgage in this state conveys no title to real estate, but is merely a lien to secure the payment of debt. In re Baxter, 132 Okla. 289, 270 P. 565. These securities must be dealt with as other securities of like nature and purpose, both by the plaintiff and the First National Bank, to the end that the First Bank of Roosevelt may be fully liquidated and its creditors and depositors paid so far as possible and any unconsumed security existing, the same to be turned back to the defendants.

Considering further the provisions of the contract providing that if all creditors and depositors were not paid by January 1, 1935, then all of the defendants' control of the security to be pledged shall cease and the Bank Commissioner and the First National Bank and Trust Company "may thereafter deal with all collateral pledged to them * * * exactly as though this contract had never been entered into," the question arises as to how the Bank Commissioner and the First National Bank would have dealt with this collateral had there never been a contract. The First National could only have resorted to suit on notes and foreclosure of the property securing the same, so far as was necessary to pay the indebtedness due it from the insolvent bank secured by the defendants and the payment of the separate indebtedness of the defendants to the bank.

As to the Bank Commissioner, he would have had the property belonging to the bank, consisting of cash on hand, notes and securities, real estate, furniture and fixtures, personal property, livestock and farm implements, together with overdrafts due the bank, as listed, introduced and made a part of the record herein. After duly advertising same for sale, he would have proceeded to sell the same to pay the creditors and depositors of the insolvent bank. The record shows these assets listed at the value of $175,975.78. In addition thereto, was the note for $25,000 for stockholder's liability, which was secured by real estate mortgages.

This suit was filed on April 26, 1935, and judgment entered therein on January 10, 1936. The testimony of the liquidator of the bank showed that the indebtedness, direct and indirect, of the insolvent bank had been paid, which included the $50,000 due the First National Bank and $25,000 due other banks for the benefit of the insolvent bank and for which sum the defendants had become personally responsible.

The note for $50,000 due the First National Bank was secured partly by the individual property of the defendants. The stockholder's personal liability note was secured exclusively by the individual property of the defendants, and these securities were also included in the trust deeds given to the Bank Commissioner. The obligations due the insolvent bank, together with cash on hand, at the date of the trial, amounted to $175,975.78, as shown by the testimony and the amount due the depositors of the bank was approximately $159,000. This was the only other obligation due from the insolvent bank. This being true, we fail to see why it became the duty of the defendants, under the terms of the contract, to execute to the Bank Commissioner a special warranty deed to all of the real estate involved in the various obligations assumed by the defendants and their bank, as was required by the decree of the trial court. It was further decreed the plaintiff, in trust, was the owner and in

exclusive possession of the personal property consisting of notes, stocks in corporations, and insurance policies, and divesting all title or claim to same in defendants.

As has been shown herein, one of the purposes for entering into the contract was to pay all creditors and depositors of the failed bank and at the same time preserving as many of the assets as possible to the benefit of the stockholders. And the contract specifically provides that the life insurance policies shall be resorted to for payment of creditors of the bank and defendants only after the exhaustion of all other assets and collateral. The insurance policies carried insurance in the total sum of $61,500, and while the cash value was much less, still a cancellation of the policies by sale would not only result in the loss of their cash values, but in a total loss of the insurance protection.

The other indebtedness against the failed bank in which defendants had become security having been paid, the obligations of the defendants (the stockholders) to the depositors did not extend beyond the assets of the bank and the $25,000 note and security thereon. The defendants being bankers and fully informed of their personal obligations in this regard, we are convinced that it was their intention in making and signing the contract and the various deeds of trust that these individual securities should be a conditional guaranty to be disposed of only on condition that the assets of the bank and the $25,000 stockholder's liability proved to be insufficient to pay the obligations of the bank, including the depositors. We believe, and so hold, that the various deeds of trust executed by the defendants conveying the various real estate properties were intended by the grantors to be a mortgage with right of foreclosure and sale under the laws providing therefor.

We think the court erred in entering judgment decreeing the Bank Commissioner to be the owner and in possession absolute, in fee simple, of the real estate named in the various deeds of trust and described in the journal entry of the court, and requiring the defendants to execute a special warranty deed conveying same for the purpose of sale and liquidation in the payment of debts and obligations of the First Bank of Roosevelt.

The trial court further erred in decreeing title in the Bank Commissioner to the personal property owned separately by the defendants to be sold and used in the liquidation of the bank's indebtedness and legal obligations and without any restrictions relative thereto.

The judgment of the court is therefore reversed and the cause remanded, with directions that the judgment be set aside and judgment be entered requiring, among other things, the plaintiff Bank Commissioner to proceed under the order of the court to the further liquidation of the bank's obligations due depositors thereof and expenses and costs accrued and to be accrued by: First. The sale of the assets of the bank, including real and personal property and including suit upon the $25,000 note and foreclosure of the mortgage securing same. Second. Sale under foreclosure of a part or all of the real estate included in the deeds of trust executed by the defendants under the terms of the contract herein referred to. Third. Sale of the personal property belonging to the defendants, placed as security under the contract, including, only as a last resort, the life insurance policies of the defendants.

That the trial court is required to proceed in other respects in accordance with the views herein expressed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, CORN, GIBSON, and HURST, JJ., concur. WELCH, J., absent. PHELPS, J., not participating.