GOLDSBOROUGH *et al.* v. HEWITT.

No. 2129, Okla. T.    Opinion Filed January 13, 1909.

(99 Pac. 907.)

1.    HOMESTEAD—Conveyance—Joinder of Wife.    The separate deed of a married man, the head of a family, to the homestead, is void.

2.    DIVORCE—Disposition of Property—Homestead.    In a divorce proceeding it is competent for the court, in the decree, to set aside the homestead to either party; but where the same makes no disposition thereof, the homestead remains to the husband, as the head of the family, discharged of all homestead rights or claims of the other party.

3.    JUDGMENT—Res Judicata.    A judgment sustaining a demurrer for misjoinder of causes of action is not available to establish the plea of **res judicata**.

(Syllabus by the Court.)

*Error from District Court, Kingfisher County; C. F. Irwin, Judge.*

Action by William H. Goldsborough and Louisa Caldwell against Robert Hewitt. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

On March 23, 1904, William H. Goldsborough and Louisa Caldwell, plaintiffs in error, plaintiffs below, brought suit against Robert Hewitt, defendant in error, defendant below, in the district court of Kingfisher county, Okla. T., and for cause of action, in substance, stated that on and for some time after February 18, 1897, they were husband and wife; that as such at that time they had living with them, and still have, three children born of said marriage; that they were the owners in fee and in possession of a certain tract of land in said county, occupied and acquired by them as their homestead in compliance with the homestead laws of the United States and the territory of Oklahoma; that in March, 1896, the plaintiff Louisa Caldwell, then Goldsborough, took the youngest child and left the territory on business, with intent to return, leaving her then husband, William H. Goldsborough, and the two other children, living on their said homestead; that during her absence said William H. Goldsborough, on February 18, 1897, without her knowledge or consent, and without consideration, executed to defendant a quitclaim deed to said homestead, and put him in possession thereof, which he has since retained and refuses to surrender on demand; that there is due plaintiffs for the use and occupation there of $2,100, for which they pray judgment, and that said deed be set aside, and for costs. On December 1, 1905, an amended answer was filed, which was in effect, a general denial and a plea of *res adjudicata* as to William H. Goldsborough. On February 19, 1906, plaintiff filed a general denial by way of reply, a jury was waived and the cause went to trial to the court. There was judgment for defendant, and, after motion for a new trial filed and overruled, plaintiffs prosecuted the cause by petition in error and case-made to the Supreme Court of the territory of Oklahoma, and the same is now before us for review by virtue of the terms of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 267),

*Spencer E. Sanders* and *F. W. Jacobs,* for plaintiffs in error.—

The separate deed of a married man to the homestead is void: *Hall v. Powell,* 8 Okla. 276; *Moore v. Reeves,* 15 Kan. 153; *Chambers v. Cox,* 23 Kan. 393; *Schermerhorn v. Mahaffie,* 34 Kan. 108; *Ott v. Sprague,* 27 Kan. 620; *Locke v. Redmond,* 6 Kan. App. 76.

On question of *res adjudicata*: *Keagy v. Wellington National Bank,* 12 Okla. 33; *Ry. Co. v. County Commissioners,* 12 Kan. 127; 21 A. & E. Enc. Law. (1st Ed.) 269; *Richmond Hosiery Mills v. W. U. Tel. Co.,* 51 S. E. 290; *Butley et al. v. Tifton, Thomasville & Gulf Ry. Co.,* 121 Ga. 817.

*W. A. McCartney* and *Lee M. Gray,* for defendant in error.— Termination of wife's interest in homestead by decree of divorce: 5 A. & E. Enc. Law. (1st Ed.) 839; *Rosholt v. Mehus,* 3 N. D. 513.

TURNER, J. (after stating the facts as above). The only assignment of error necessary for us to consider is that the judgment is not supported by the evidence and is contrary to law.

The facts are undisputed. They are: That in March, 1896, plaintiffs were living as husband and wife on their homestead in Kingfisher county; that there were living with them their three children; that about that time the plaintiff, then Louisa Goldsborough, now Louisa Caldwell, took the youngest child and went to Kansas to secure employment; that while gone, without her knowledge, consent, or joinder, and without consideration, to wit, on February 18, 1897, her coplaintiff, then her husband, made, executed, and delivered to defendant a quitclaim deed to their said homestead, and put him in possession, which he has since retained.

At that time the law provided (St. Okla. 1893, § 2844):

"The following property shall be reserved to the head of every family residing in the territory exempt from attachment or execution, and every other species of forced sale for the payment of debts, except as hereinafter provided: First, the homestead of the family."

Section 1627:

"All instruments conveying or affecting the title to the homestead exempted by law to the head of a family, shall be void unless the husband and wife sign and acknowledge one and the same joint instrument conveying the same."

This conveyance was therefore void. *Hall v. Powell et ux..* 8 Okla. 276, 57 Pac. 168; *Moore v. Daniel Reaves et al.,* 15 Kan. 150; *Matthew Chambers and Wife v. Robert H. Cox,* 23 Kan. 393; *C. M. Ott v. Amy Sprague,* 27 Kan. 620; *W. R. Hill et al. v. Chas. Alexander et al.,* 2 Kan. App. 251, 41 Pac. 1066; *Mary M. Locke v. Margaret Redmond,* 6 Kan. App. 76, 49 Pac. 670; *Schermerhorn v. Mahaffie,* 34 Kan. 108, 8 Pac. 199.

In *Chambers and Wife v. Cox, supra,* Brewer, J., speaking for the court, said:

"The separate deed of a married man to the homestead is void; it does not divest him of title, nor estop him from recovering the land. The question is not, who will inherit from him? but, has his title been divested? And the Constitution says that his title to the homestead shall not pass unless his wife joins in the deed. While the Legislature may regulate the matter of inheritance, it cannot avoid or limit the constitutional provision, for the protection of homesteads. The Constitution forbids the alienation without the joint consent of husband and wife. It does not add, 'providing they are living together and occupying the homestead,' nor, 'providing that both are residents of the state'; but the prohibition against separate alienation is absolute, when the relation of husband and wife exists."

This would seem to be conclusive of the question, and would be were it not contended in support of the judgment that Louisa Caldwell, being divorced from William H. Goldsborough, has no interest in the subject-matter of this suit, and the alleged rights of William H. Goldsborough to the land in controversy have heretofore been decided by the court adversely to him in the case of William H. Goldsborough v. Robert Hewitt, and are, therefore, *res adjudicata.*

We think the first point well taken. The undisputed facts are, in addition to those already stated, that after making the

deed to defendant, and while his wife was gone, as stated, Will
iam H. Goldsborough brought suit for divorce against her by
publication, on July 12, 1897, and obtained a decree, October 30,
1897, while she was still absent from the territory. At the time
of the rendition of that decree, the chancellor, undoubtedly, had
the right, under Wilson's Rev. & Ann. St. Okla. 1893, § 4839,
to set aside the homestead to either plaintiff or defendant; but
the decree being silent on the subject, we are constrained to hold
that she retained no right therein, but that the same remained
in the husband. In *Brandon v. Brandon,* 14 Kan. 342. Brewer,
J., in speaking of the power of the chancellor in the premises,
under Laws 1870, p. 180, c. 87, § 27, which confers power similar
to those conferred by section 4839, *supra,* said:

"In so far as it is a homestead, it is the homestead of each,
and upon a divorce the court has the power to assign it to either.
The statute expressly gives the court the power in case of a di-
vorce, whether granted for the fault of the wife, or the husband,
to give to her such share of her husband's real or personal estate
as shall be just and reasonable."

See, also, *Blakenship v. Blakenship,* 19 Kan. 159.

That she retained no right to the homestead is by reason of
the fact that the statute expressly reserves it to the head of the
family, which was William H. Goldsborough. By the decree she
ceased to be a member of the family the same as if dead, and
thereby lost all claim upon or right to it as a homestead. A
citation of authority would seem unnecessary in support of this
position, but it has a number of times been so expressly held.

In *Burns v. Lewis,* 86 Ga. 591, 13 S. E. 123, the court said:
"That the dissolution of the marriage severed Mrs. Lewis
from the family, and she was no longer a beneficiary of the home-
stead. But by the Constitution of 1868, her husband, as the
head of a family, had the right to a homestead, of which the
sole beneficiaries were the members of his family. Code 1873, §
5135. * * * A total divorce severs the wife from the family
as effectually as death itself. She ceases to be a beneficiary of
the homestead provision, and her relation to it thenceforth is the
same as if she had never been a member of the family. The pro-

vision which the law contemplates for a divorced wife is alimony, or such an interest in the property as' the jury rendering the final verdict shall award to her.   In this instance, the jury thought proper to declare in express terms that no alimony was to be set apart for her support.   We have already seen that the effect of this was to leave the title to the property now in question in Lewis.   If her interest in it as a homestead was destroyed by the dissolution of the marriage, and the verdict conferred upon her no new interest, she was left altogether without right to use or occupy the premises, and consequently, when Lewis brought his action against her in 1874, both title and the right of possession were in him."

In *Julius Rosholt v. Thea Mehus,* 3 N. D. 513, 57 N. W. 783, 23 L. R. A. 239, numerous authorities are cited in support of this position.   In that case, section 2 of the syllabus reads:

"In divorce proceedings, it is competent for the court to assign the homestead to the innocent party, either absolutely or for a limited period; but where the decree in the divorce procedings is silent upon the question, the homestead will, upon the dissolution of the marriage, remain in possession of the party holding the legal title thereto, discharged of all homestead rights or claims' of the other party."

In *Mary Stahl v. Catharine Stahl et al.* 114 Ill. 375, 2 N. E. 160, the first section of the syllabus reads:

"Where a wife procures a divorce from her husband, the court is authorized to make disposition as to the homestead; but if the court fails to do this, the relation of husband and wife being severed by the decree of divorce, the latter loses all claim to a homestead. so that the husband may sell the premises without her release of homestead right."

See, also, *Heaton v. Sawyer,* 60 Vt. 495, 15 Atl. 166; *Redfern v. Redfern,* 38 Ill. 509; *Wiggins v. Buzzell,* 58 N. H. 329.

In *Brady v. Kreuger et al.,* 8 S. D. 464, 66 N. W. 1083, 59 Am. St. Rep. 771, Kipp and Overby on April 11, 1893, were partners in business as Kipp & Overby.   Kipp and his family and Overby occupied the second story of the business building as a residence.   On that date Overby conveyed his interest in the real and personal property of the partnership to Brady, and the business continued to be carried on under the firm name of

Kipp & Overby until November, 1893, when Brady bought Kipp's interest in the partnership property. At the time Kipp sold his interest to Brady, Kipp and his family still occupied the second story of the store building, but the deed to the real property was not signed by Mrs. Kipp. In December, 1893, a decree of divorce was granted disolving the marriage between Mr. and Mrs. Kipp; but she continued to occupy the second story as aforesaid until March, 1894, when she went on a visit and put defendant Kreuger in possession of the rooms to occupy them for her, which he was doing at the time the action of ejectment commenced. At the close of the evidence, the court directed a verdict in favor of plaintiff, and from the judgment entered thereon defendants appealed. Mrs. Kipp sought to set up a homestead in the property conveyed by her husband without her joinder, but the Supreme Court, in affirming the judgment of the lower court, held that she was not entitled to a homestead therein. The Supreme Court affirmed the judgment of the lower court, and, in passing, said:

"There is, however, another and perhaps more satisfactory ground upon which the ruling of the court can be sustained, and that is that the defendant Minnie Nidrow, formerly Minnie Kipp, having been divorced from her husband in the fall of 1893, ceased to have any right to the occupancy of the homestead property, admitting that there could have been such a right in co-partnership property, after she ceased to be the wife of Kipp, who had the legal title to the property at the time he transferred the same to the plaintiff. The only evidence of the divorce was the admission of Minnie Nidrow, when on the witness stand as a witness. She stated in December, 1893, there were divorce proceedings between her and her husband, and that a divorce was granted. and that her name was Minnie Nidrow, but was formerly Minnie Kipp. This evidence was admitted, without objection and *prima facie* established the divorce; and, as her evidence was not controverted or disputed, we must assume that a divorce was properly granted. Appellants contend that this court will presume, in the absence of evidence to the contrary, that the decree gave her the right to retain possession of the homestead. But this we cannot do.

"Courts will sometimes indulge in presumptions to support

a judgment of a court, but never to reverse it. In the absence, therefore, of any proof as to the contents of the decree of divorce, we cannot presume it contained anything favorable to the defendants. The relation of husband and wife having terminated, the wife ceased to have any claim upon, or right in the husband's property, whether homestead or otherwise, unless such rights were preserved by the decree of the court. If the decree of the court preserved her rights to the homestead, or conferred upon her any other privileges in, or interest in or to, the property of the husband, the burden was upon her to entablish such rights by the decree, as she clearly would have no right to the possession of the homestead after a decree of divorce had been granted, unless saved by the decree.

" * * * As the wife, upon a dissolution of the marriage, ceases to be the wife, and can never be the widow of her divorced husband, her claims upon his property, necessarily, also cease and terminate upon the divorce. *Rosholt v. Menus*, 3 N. D. 513, 57 N. W. 783, 23 L. R. A. 239. It was undoubtedly for these reasons that the Legislature of this state has conferred upon the courts in which a decree of divorce may be obtained such comprehensive powers for regulating the rights of the wife in the property of the husband. Sections 2581-2585, Comp. Laws. The rights of the wife, therefore, in her husband's estate, after a divorce is granted, are regulated and determined exclusively by the provision of the decree of divorce, unless there is some valid contract between the husband and wife. When a wife, after the divorce, seeks to assert any claim to any part of the husband's property, homestead or otherwise, she must establish that right by the decree, or by a valid contract between herself and husband. In the case at bar, the defendant failed to show any such right. Neither Mrs. Kipp nor Kreuger presented any valid defense to plaintiff's claim for the possession of the property, and hence the plaintiff was entitled to a verdict as a matter of law. * * * A conveyance of the homestead, not executed by both husband and wife, the statutes declare shall be of no validity. Section 2451, Comp. Laws, amended by chapter 76, 77, pp. 190, 191, Laws 1891."

We are therefore of the opinion that Louisa Caldwell had no interest in the subject-matter of this suit, and that the court did not err in so holding.

But are the rights of William H. Goldsborough *res judicata?*

The trial court, in effect, thus held, but therein we think was error. The testimony discloses that before bringing this suit, to wit, on December 29, 1903, Goldsborough brought suit against defendant in the district court of Kingfisher county, and in the first count of his petition declared in ejectment for the land in controversy and for damages, and for rents and profits, and in the second count embodied the allegations in the first count, and further, in substance, stated that at the time he made the quitclaim deed aforesaid he was the owner of the property, the same being his homestead by virtue of a homestead title, under patent from the United States; that said deed was procured from him by defendant through fraud; that at the time he had pending a divorce suit against his wife; that in order to keep her from having any of said property, and that the same might inure to himself and children he made said deed to defendant in trust with the understanding and agreement that the same should be reconveyed to him when the matters in litigation in that suit were fully settled; that the same were settled; that he had made demand on defendant for said reconveyance; that he had refused to do so; that the quitclaim deed and possession given defendant thereunder were without consideration; and prayed, in effect, that the title of the land be revested in him by decree of the court, and for $2,000 for mesne profits and for general relief, thereby attempted to join two different classes of action, contrary to Wilson's Rev. & Ann. St. Okla. 1903, § 4287, sub-secs. 6, 7. The evidence further discloses that to this petition defendant demurred, upon the ground that it failed to state facts sufficient to constitute a cause of action, and upon the further ground that there was a misjoinder of causes of action; that it was sustained by the court, and the petition dismissed.

It is well settled that, where a demurrer runs to the merits of the case, the judgment of the court sustaining it and dismissing the bill is a judgment upon the merits of the controversy, and is a bar to any subsequent suit between the said parties upon the same cause of action. *Brown v. Kirkbride,* 19 Kan. 588; Am.

& Eng. Enc. of Law (2 Ed.) 789. But the demurrer did not run to, nor did the court in passing upon it decide upon, the merits of the case. The demurrer was general and to the petition as a whole, and stated two grounds—misjoinder of actions, and failure to state facts sufficient to constitute a cause of action. As the record fails to disclose upon which of these grounds it was sustained, and as we cannot presume error, we are forced to conclude that it was sustained upon the ground of misjoinder of causes, as that was the only proper ground upon which it could have been sustained. We say this for the reason that, as the first count stated a good cause of action in ejectment, the court would have erred in sustaining upon the second ground, for the reason that a general demurrer to the whole petition should be overruled where the petition contains a statement of two causes of action, one of which is good. *Hanenkratt v. Hamil,* 10 Okla. 219, 61 Pac. 1050.

The record further discloses that after sustaining the demurrer generally, the court "further finds that said cause is without equity, and said petition is therefore dismissed." This the court had no right to do. No ground whatever existed at that time for dismissing the petition. Upon sustaining the demurrer, the court should have permitted plaintiff to separate his causes of action, pursuant to section 92 of chapter 66 of the Code of Civil Procedure (St. Okla. 1893), which reads:

"When a demurrer is sustained, on the ground of misjoinder of several causes of action, the court, on motion of the plaintiff, shall allow him, with or without costs, in its discretion, to file several petitions, each including such of said causes of action, as might have been joined; and an action shall be docketed for each of said petitions, and the same shall be proceeded in without further service."

Failing in which, the court would then, and not till then, have, and only for that reason, the right to dismiss the petition. For the reason that we do not regard this summary and wrongful dismissal, nor the sustaining of the demurrer for misjoinder of causes, an adjudication on the merits, the judgment of the court

in that cause cannot be successfully invoked to establish the plea of *res judicata*. 24 Am. & Eng. Enc. of Law, 798, says:

"A judgment upon a demurrer, which is based upon a formal or technical defect of pleading, a lack of jurisdiction, a misjoinder of parties, or the like, as it does not involve the merits of the controversy, cannot be made available as *res judicata*."

We are therefore of the opinion that the judgment of the trial court is not sustained by the evidence, and is contrary to law, and for that reason the cause is reversed and remanded for a new trial.

Williams, C. J., and Dunn and Hayes, JJ., concur; Kane, J., disqualified.