25 P.(2d) 809

LOPEZ v. TOWNSEND et al.

No. 3784.

Supreme Court of New Mexico.

May 16, 1933.

On Rehearing Sept. 26, 1933.

Brice & Sanchez, of Santa Fé, for appellant.

Gilbert & Hamilton, of Santa Fé, and J. D. Atwood, of Roswell, for appellees.

BICKLEY, Justice.

This action was brought under Compiled Statutes 1929, section 36-101, by plaintiff (appellant), widow of Venceslao Lopez, who, it is claimed, was killed through the negligence of the defendants, Townsend & Scenic Stages, Inc., in operating a stage coach between the cities of Santa Fé and Roswell, by striking him with such coach as he was walking in the highway near the city of Santa Fé, driving a team of horses. A defendant, American Fidelity & Casualty Company, was surety on the bond of the other defendants as provided by article 10, chapter 11, Compiled Statutes 1929 (section 11-1001 et seq.).

To the plaintiff's complaint, demurrers were filed by the respective defendants; such demurrers being in most particulars the same. The grounds of the demurrer, briefly, were that two causes of action had been improperly joined in the said complaint, to wit: a cause of action sounding in tort against the defendant Townsend and the Scenic Stages,

Inc., with a cause of action in contract against the defendant American Fidelity & Casualty Company; that there is a misjoinder of parties defendant in said complaint, in that the American Fidelity & Casualty Company is improperly joined as a party to a cause of action against the other defendants sounding in tort, as to the commission of which tort it is not alleged said defendant American Fidelity & Casualty Company was a party; that there is a misjoinder of parties defendant, in that the defendants Townsend and Scenic Stages, Inc., are improperly joined as parties defendant in a cause of action in contract upon an alleged policy of insurance alleged to have been executed by the American Fidelity & Casualty Company, and which the complaint affirmatively shows was not executed by either of the defendants Townsend or Scenic Stages, Inc.; "That said complaint fails to state sufficient facts to constitute a cause of action against this defendant for each of the following reasons: [Here follow seven reasons assigned.]"

The trial court on the 12th day of January, 1932, ordered that the demurrers of each of the said defendants be sustained, and further ordered: "That the plaintiff herein shall further plead in this cause if she so desires, within 20 days from and after this date."

On the 30th day of January, 1932, the plaintiff filed a written request for specific rulings on the demurrers, and that said cause be not dismissed under any conditions as to the defendants Townsend and Scenic Stages, Inc., the said request being as follows:

"Comes now the plaintiff in the above entitled and numbered cause, and prays the Court to state specifically his ruling on each ground of demurrer set up by each of the defendants in their respective demurrers, which the Court sustains, and each ground of demurrer, if any which the Court overruled.

"The plaintiff further requests the Court that in case, for any reason, he holds that the defendant, American Fidelity & Casualty Company, is not a proper party defendant, or that no action could be maintained against it in this suit, then that he do not dismiss this action against the other defendants, but only as to the defendant, American Fidelity & Casualty Company."

On the 19th day of February, 1932, the court considered said request, and announced:

"Being of the opinion that the ruling heretofore entered herein on said demurrer is sufficiently explicit;

"It is therefore ordered by the court that the request for specific rulings on demurrer, and the said cause be not dismissed under any conditions as to the defendants Charles T. Townsend and Scenic Stages, Inc., be and the same is hereby in all things denied, to which rulings and each of them the plaintiff excepts."

On the 30th day of January, 1932, there was filed by the plaintiff a notice that plaintiff will not further plead, the said notice being as follows: "Comes now the plaintiff in the above entitled and numbered cause.

and states to the court that upon the Court's refusal to announce specific decision on the several grounds of demurrer set out in the several demurrers of the defendants and upon the Court's statement that he will dismiss this cause of action as to all parties, the plaintiff announces that she will not further plead herein, but will stand upon her present pleadings."

On the same day there were filed exceptions to the order of the court sustaining demurrer of the defendants. Among the other exceptions were to the court's failure and refusal to state the ground upon which it decided the demurrer. On the 19th of February there was filed a paper entitled "Amended Exceptions to Order of Court Sustaining Demurrer," which again excepted to the court's failure and refusal to state the ground upon which the court decided the demurrer.

On the 19th day of February, 1932, the plaintiff filed objections and exceptions to the proposed judgment to be entered in this cause, among which objections was:

"That, assuming that there was a misjoinder of causes of action, authorizing the dismissal of said cause as to the defendant, American Fidelity and Casualty Co., the only order that can be entered is a dismissal as to it, and not a judgment on the facts that have never been tried.

"That, assuming that there was a misjoinder of causes of action, judgment against the plaintiff in favor of the defendants, Townsend and Scenic Stages, Inc., should not be entered as though said cause had been tried upon the facts; nor should it be dismissed as to said defendants, because a full and complete cause of action has been set out against them and the court was not authorized to dismiss such cause as to them."

On the said 19th day of February, the court entered judgment: "Now, therefore, on motion of the defendants, it is considered, ordered, and adjudged that the plaintiff, Andrellita Sandoval de Lopez, do have and recover nothing from the defendants, or either of them in this cause, and that said defendants do have and recover of and from the plaintiff, their costs of suit herein, to which the plaintiff in open court objects and excepts upon all of the grounds set out in plaintiff's objections and exceptions to the entry of this judgment herein, and upon all of the grounds upon which her exceptions to the overruling of the two demurrers to plaintiff's amended complaint herein, as set out in written exceptions filed in this cause."

The plaintiff appealed from the judgment, and relies for reversal upon 17 points stated in her brief. Many of these points go to the merits of the various grounds of the demurrers which were sustained by the trial court. Points 7 and 8 present a procedural question which, in our opinion, is of sufficient importance to require a decision. They are thus stated:

Point 7. The plaintiff on request was entitled to specific rulings on the demurrer so that in case it was sustained on the ground of misjoinder of causes of action she could

make application for a division of the actions.

Point 8. Where there is a general demurrer on the ground that a complaint does not state facts to constitute a cause of action, and also a special demurrer on the ground of misjoinder of causes of action, and the court sustains the demurrer generally and refuses to state whether or not it was sustained because of misjoinder of causes of action, it will be presumed that the demurrer was sustained because of the insufficiency of complaint.

Point 7 presents the proposition that the plaintiff was at least entitled to be advised as to whether or not the demurrer had been sustained upon the ground of misjoinder of causes of action, in order that, if she were so advised, she could make a motion to divide the actions as provided by section 105-604, Comp. St. 1929. The material portion of said statute is as follows: "If the demurrer be allowed for the reason that causes of action have been improperly united, the court may in its discretion, and upon such terms as may be just, order the action to be divided into as many actions as may be necessary to the proper determination of the causes of action therein mentioned."

Statutes similar to ours exist in a number of jurisdictions, and have been construed in several. In section 223 of Bancroft's Code of Pleading it is stated: "Where a complaint is demurred to generally and also upon the ground of misjoinder of causes of action, it is the duty of the court, it has been held, to pass upon the latter ground of demurrer even though it holds that one of the causes of action is insufficient; if the court sustains the demurrer upon such ground, it should so state, so as to enable the plaintiff to file several actions, and if it fails to do so, it will be presumed on appeal that the demurrer was sustained because of the insufficiency of the petition."

In Bennett v. Preston, 17 Ind. 291, three causes of demurrer were assigned: (1) Want of sufficient facts to constitute a cause of action; (2) misjoinder of causes of action; (3) misjoinder of defendants, in this, that there were too many defendants. The trial court sustained the demurrer generally and dismissed the suit. On appeal the Supreme Court said: "As to the second ground of demurrer, if valid, it was not cause for dismissal of the suit, but only for the docketing of the causes as separate actions."

In Nebraska, the statute being similar to ours, the court in Alexander v. Thacker, 30 Neb. 614, 46 N. W. 825, decided: "Where a demurrer is sustained on the ground of nonjoinder of parties defendant, the court should not dismiss the action without giving the plaintiff an opportunity to bring in the absent party."

The Supreme Court said that there was a nonjoinder of parties defendant, but added: "Such defect, however, was not sufficient grounds for dismissing the suit without giving an opportunity to bring in the holder of the legal title. The plaintiff should have been ordered to bring in the absent party,

within a time to be named by the court; and, in default thereof, the suit be ordered dismissed."

. In Neun v. B. H. Bacon Co., 137 App. Div. 397, 121 N. Y. S. 718, 720, the court, considering demurrers which had been interposed by each defendant on the ground that several causes of action were improperly united, said:

"Section 497 of the Code of Civil Procedure provides:

" 'If a demurrer to a complaint is allowed, because two or more causes of action have been improperly united, the court may, in its discretion, and upon such terms as are just, direct that the action be divided into as many actions as are necessary for the proper determination of the causes of action therein stated.'

"The authority in pursuance of this section has been several times exercised. Roehr v. Liebmann, 9 App. Div. 247, 249, 41 N. Y. S. 489; Myers v. Lederer, 117 App. Div. 27, 30, 101 N. Y. S. 1088.

"The Code of Civil Procedure, therefore, preserves to a plaintiff his causes of action where it is held on demurrer that they are improperly united, so that he is not obliged to commence anew. If important, he is in the same condition as if the demurrer had been overruled so far as the defense of the statute of limitations is concerned."

The Supreme Court of Oklahoma in Goldsborough v. Hewitt, 23 Okl. 66, 99 P. 907, 138 Am. St. Rep. 795, construing a statute similar to our section 105-604, decided that the court has no right to summarily dismiss the action without giving the plaintiff an opportunity to proceed under this section.

In Whitely v. St. Louis, E. R. & W. R. Co., 29 Okl. 63, 116 P. 165, 167, the court said: "We are therefore of opinion that the petition states facts sufficient to entitle plaintiffs 'to a new trial, and that the demurrer should have been overruled; that is, unless, as is contended, the court was right in sustaining the demurrer to the petition on the ground of misjoinder of causes of action. But we cannot infer that the court so held for the reason that we have several times declared it to be the duty of the court, where a demurrer is sustained on that ground, to so state in order to afford plaintiffs an opportunity to file several petitions, as provided by Wilson's Dig. Okl. § 4296. Failing so to do, as we cannot presume error on the part of the trial court, we cannot presume his ruling was upon that ground. In Chauncey A. Owen et al. v. City of Tulsa et al. [27 Okl. 264], 111 P. 320, speaking to a demurrer there, as here, interposed to a petition on the ground of misjoinder of causes of action, we said: 'Had the court sustained it upon the ground of misjoinder of causes of action, it would have been the duty of the court to so state at the time in order to afford plaintiff's counsel an opportunity to move to be allowed to file separate petitions each to include such of said causes of action as might have been joined, and had them each docketed, pursuant to section 92 of chapter 66 of the Code of Civil

Procedure, Statutes of Oklahoma 1893. Goldsborough v. Hewitt, 23 Okl. 66 (99 P. 907 [138 Am. St. Rep. 795]) ; Weber et al. v. Dillon, County Treas., 7 Okl. 568 (54 P. 894). As the court made no such indication and counsel were therefore afforded no such opportunity, it is but fair to presume that the court sustained the demurrer upon the third ground, which is that the petition fails to state facts sufficient to constitute a cause of action.' "

In 49 C. J. Pleading, § 556, discussing decisions on demurrer in general, it is said that it is not necessary that the ground on which the ruling is made be specified. Two Florida cases were decided at the 1908 term, Hoopes v. Crane, 56 Fla. 395, 47 So. 992; Gainesville, etc., R. Co. v. Peck, 55 Fla. 402, 46 So. 1019. The 1909 Florida Legislature enacted the following statute: "That the judges of the several courts of the state of Florida, before whom are argued demurrers and motions on any pleading in their several courts, shall briefly state in writing which grounds of the demurrer or motion are sustained, and which grounds are overruled." See Florida Acts 1909, c. 5912.

A similar statute exists in Connecticut. See Conn. Gen. Stats. 1930, § 5666.

In Johnston v. Smith, 86 N. C. page 500, a case cited to the C. J. text, the court said: "The exception taken by the defendant to the refusal of His Honor to specify in his judgment which of the causes of demurrer were sustained, is not tenable. We know of no law or rule of practice which required the court to do so, while we admit such a practice would be convenient to the party demurring and the saving of labor to the appellate court."

The C. J. text continues: "Although it has been held otherwise when the demurrer is sustained for misjoinder of actions"—citing Whitely v. St. Louis, etc., R. Co., supra.

We are in sympathy with the ideas of convenience expressed by the North Carolina Supreme Court, supra. Comp. St. 1929, § 105-412, declares: "The demurrer shall distinctly specify the grounds of objection to the pleadings; unless it does so, it may be disregarded."

This is designed for the convenience of the party whose pleading is assailed and of the court deciding upon the sufficiency of the pleading. The rationale of the statute suggests the benefits of an indication by the court as to which of the grounds of the demurrer are sustained and which grounds are overruled. However, we do not now deem it proper to go any further in this direction than the Legislature has gone.

■ Our statute is a plain mandate to the court to state whether he sustains or overrules a demurrer made upon the ground that "Causes of action have been improperly united." Where a duty is imposed upon the court, which affects a right of a litigant, it is error to refuse to perform such duty.

It is suggested by appellee that appellant has waived the error by laches, in that she elected to stand on her complaint prior to

asking for the specific rulings. We do not so understand. While the formal order overruling the request for specific rulings on the demurrer was entered February 19, 1932, it appears that some indication of the position of the court was made prior to the entry of said order, because in the notice by plaintiff of her intention to stand upon her complaint she stated that she was doing so "upon the Court's refusal to announce specific decision on the several grounds of demurrer set out." And, in her exceptions to the action of the court filed on the same day of her election to stand, she excepted to the refusal of the court to state the ground upon which he decided the demurrer.

We do not regard the statement of the court that he was of the opinion that the ruling theretofore entered on the demurrer was sufficiently explicit as in any way tending to cure the error. Such ruling was not as explicit as the statute demands.

■ True it is that, if the court sustains the demurrer upon the ground "that causes of action have been improperly united," the court is vested with a discretion as to the course of proceedings thereafter to be taken. But the plaintiff was not given the opportunity the statute affords to invoke this discretion. It is no answer to say that plaintiff had an opportunity to amend after the demurrer was sustained by dividing her causes of action if more than one were pleaded. She was entitled under the statute to be informed by the court as to whether she had improperly united more than one cause of action. By her point 7 appellant urges a reversal. By point 8 she seeks the benefit of a presumption that the court did not sustain the ground of the demurrer challenging the complaint for misjoinder of causes as suggested by the decision in Whitely v. St. Louis, etc., R. Co., supra. The question of whether one cause of action is presented by the complaint or if there are two causes of action pleaded therein improperly seems from an examination of the briefs and from the oral argument to be the central question in the case, and we do not think it would be appropriate to presume that the court overruled this ground of the demurrer, and thus avoid deciding this important question.

Orderly procedure dictates that the judgment be reversed and the cause remanded, with direction to comply with the statute as herein construed, and it is so ordered.

This disposition is somewhat similar to that taken in Morrow v. Martinez, 27 N. M. 354, 200 P. 1071. We call the attention of the parties to section 2 of rule X of rules of appellate procedure.

WATSON, C. J., and SADLER, HUDSPETH, and ZINN, JJ., concur.

### On Rehearing.

WATSON, Chief Justice.

■ Although appellant had won a reversal, we have granted her motion for rehearing, in which she asks that we go on and decide the question of misjoinder, one of great

public importance, necessary of ultimate decision in this case, and fully argued.

There is inaccuracy in the statement of the original opinion that appellee American Fidelity & Casualty Company was surety on the bond of the other appellees. It had issued a policy indemnifying them against loss and damage from injuries to third persons, such as that claimed in this case. In one respect only the policy itself contemplates a direct liability to the public. If, because of bankruptcy or insolvency of the assured, a judgment against them on a claim covered by the policy cannot be satisfied by execution, "the judgment creditor shall have a right of action to recover the amount of such judgment against the company (the insurer) to the same extent that the assured would have had to recover against the company had the assured paid the said judgment."

By indorsement or rider the contract assumes quite a different form. It states that the policy is written and is to be construed in accordance with N. M. Laws 1929, c. 129, and rules and regulations of the State Corporation Commission adopted thereunder, and that it is subject to all the provisions thereof.

Then, by the rider, " * * * the insurer * * * agrees to pay any final judgment within the limits set forth in the schedule * * * for injury to and/or death of persons * * * resulting from the ownership, maintenance or use of any and all motor vehicles pursuant to a certificate of public convenience and necessity is-

sued by the Corporation Commission of New Mexico."

Laws 1929, c. 129 (1929 Comp. St. ch. 11, art. 10 [section 11-1001 et seq.]), generally regulates the business of operating motor vehicles as common carriers. Section 5, in so far as here important, reads:

"No certificate of public convenience and necessity shall be issued by the corporation commission to any motor carrier until such motor carrier shall have filed with said commission and obtained its approval of either a surety bond or policy of insurance issued by some company authorized to do such surety or insurance business in this state, guaranteeing the payment to the public of all losses and damages proximately caused by the negligence or wilful misconduct of such motor carrier, its servants or agents, in not less than the following amounts, to-wit: * * *

"All such bonds or insurance policies shall provide a guarantee of payment of all loss or damage caused as aforesaid by any such vehicle operated upon the highways of this state in the conduct of the business of the motor carrier therein named, whether or not such vehicle be specified in such bond or policy, and shall be for the benefit of and subject to immediate suit or action thereon by any person who shall sustain actionable injury or loss protected thereby, notwithstanding any provision in said bond or policy to the contrary; and every such bond or insurance policy so given shall, in any suit or action, be conclusively presumed to have been given ac-

cording to and to contain all the provisions of this act." 1929 Comp. St. § 11-1005.

The ultimate liability of the insurer to one injured by the negligence of the assured is not questioned. The contention is that, since the insurer was not a party to the negligence, and since its liability is contractual only, and since its agreement is merely to pay a final judgment recovered for the tort, there is no joint cause of action; and that the two causes of action, one in contract and the other in tort, and the insurer and the assured as parties defendant, are improperly joined in this cause.

A great many authorities are brought to our attention. These we need not refer to here. There is no contention that the Legislature could not authorize joinder of parties and causes in such a case as this. The question is whether it has done so. It is one of statutory construction, and no controlling decision has been found.

One provision of section 5, supra, is to our minds decisive: "All such * * * policies * * * shall be for the benefit of and subject to immediate suit or action thereon by any person who shall sustain actionable injury or loss protected thereby. * * *"

There is no point of time to which "immediate" can reasonably relate except the time of sustaining the injury. The occurrence of an actionable injury or loss protected by the policy immediately, without intervening time or event, gives the right to sue.

It is strongly urged that the right to sue is immediate upon a judgment becoming final against the tort-feasor. So to hold would require some refinement of reasoning, and would withhold from the public benefits of a remedial statute which we cannot doubt the Legislature intended to confer.

True, other language of the section, technically taken, is calculated to express a secondary liability on the part of the insurer. Either its technical meaning must yield or the Legislature must be deemed to have declared that both the primary and the secondary liability may be tested by immediate suit.

It is only "actionable injury or loss protected" by the policy for which immediate suit may be brought. We do not consider this to mean or to warrant the holding that whether there was in fact an injury or loss, whether such injury was actionable, and whether protected by the policy, are questions first to be adjudicated against the tort-feasor. The Legislature was assuming, just as we now assume, a *cause of action.* It was dealing with the *right to sue.* It made the right immediate.

The right to sue immediately does not necessarily imply the right to sue jointly. The statute does not expressly give the latter, and general principles oppose it. So, it is urged, interpreting "immediate" as we do, we must hold that the insurer could be sued singly, and, even then, we would not be warranted in holding that it could be sued jointly.

The conclusion we think unsound, disregarding the correct course of arriving at the rights of the parties. We reason thus:

We look to the contract as controlling except as to provisions which are inconsistent with those of the statute. Where there is inconsistency, the latter control, according to both statute and contract.

The contract, in so far as it covers public liability, is a mere agreement to pay a final judgment obtained against the assured. It creates a secondary liability. As it stands there, both the liability to pay and the liability to be sued are postponed until a final judgment for the tort shall have been obtained.

Here the statute comes in. It prevents postponement of the liability to be sued. It does not prevent postponement of the liability to pay. Sued singly, the insured may validly object that its liability to pay is dependent upon adjudication against the tort-feasor. But, objecting, as it does here, to being sued jointly, the right of the injured party to sue immediately is controlling. Varying the contract only so far as the statute requires, giving the injured party all that the statute gives her, and taking from the insurer nothing that the statute does not take, the result is that there may be an immediate suit to which both insurer and assured are parties defendant, but not an immediate suit against the insurer alone. This statutory resultant is a status intermediate primary and secondary liability.

The argument we have just attempted to answer has been influential in some courts, considering other statutes. Smith Stage Co. v. Eckert, 21 Ariz. 28, 184 P. 1001, 1004, 7 A. L. R. 995. Even if we could not answer it to our satisfaction, and if we were as strongly impressed as was the Supreme Court of Arizona that to permit suit, judgment, and satisfaction against the insured alone would be unfair and unreasonable, we should still feel constrained to disregard it; such is the force of "immediate," as here employed. The very fact that there has been so much controversy over this question of joinder, with lines so closely drawn, suggests that the Legislature sought and inserted a word, not found in other statutes, which it thought would settle the matter.

So we conclude that the demurrer was not good in its several points wherein it challenged appellant's right to adjudicate in a single action the liability of the tort-feasor and of the insurer.

There remain to be considered the specifications under the proposition that the complaint fails to set forth facts constituting a cause of action. These points are made: (1) Failure to allege that the automobile in question was being operated only or at all for transportation of passengers for compensation at the time of the injury; (2) failure to allege that the automobile was in the passenger and/or express service; (3) failure to allege that the automobile was being operated pursuant to a certificate of convenience and necessity; (4) failure to allege that the automobile was being operated on a route authorized by the Corporation Commission.

In urging the necessity of such allegations, the casualty company points to provisions of

the policy, limiting liability. With these we are not concerned. They affect the insurer's liability to indemnify the assured. In that matter the public is not interested. We look to the rider and the statute.

By the rider, the insurer agrees to a liability for injury or death resulting from use of any motor vehicle pursuant to a certificate of convenience and necessity. By the statute, the liability is for "all loss or damage caused as aforesaid by any such vehicle operated upon the highways of this state in the conduct of the business of the motor carrier." "Caused as aforesaid" means "proximately caused by the negligence or wilful misconduct of such motor carrier, its agents or servants."

The complaint sets forth the issuance of certificate of convenience and necessity No. 44, to Capital Stages, Inc., and its transfer to appellee Charles T. Townsend, and the commission's approval of the transfer. The policy runs to Scenic Stages, Inc., and/or Charles T. Townsend. The complaint alleges, in paragraph 8, that the assured were, at the time in question, "engaged in running his, their or its stages, coaches and automobiles, as a public carrier, for the transportation of persons as passengers between the cities of Santa Fé and Roswell * * * as authorized by said certificate. * * * " Then, by paragraph 9, that the assured were operating the automobile in question at the time of the injury "in the manner and for the purposes and under the certificates set out in paragraph 8 hereof."

This we think sufficiently answers points 1 and 2.

Perhaps by inadvertence, the complaint confuses the actual transfer of the certificate of convenience and necessity with the approval thereof, saying "said transfer being endorsed on the back thereof, and is in words and figures as follows," and then setting forth the words and figures of the approval by the Corporation Commission. But the validity of the transfer is not here involved. Both the Corporation Commission and the casualty company recognized it. We think this sufficient as to point 3.

■■ Point 4 is emphasized. The place of the injury is set forth in the complaint as "the street or highway entering the City of Santa Fé from Roswell * * * and within the limits of the City of Santa Fé." This, it is urged, does not sufficiently fix the place as being on the route authorized by the certificate, viz., "over state highways 2 and 41 and U. S. highways 70 and 470, between Roswell and Santa Fé and intermediate points, including Estancia."

There are two implications from the argument: That the policy liability ceased on arriving at the Santa Fé city limits; or that it ceased if the stage company operated on any other street than an "official routing" of one of the highways mentioned in the certificate. It is claimed that the policy does not "cover operations while picking up or delivering passengers within the city limits * * * where the risk of accidents would necessarily

be much greater than on the open road." It is said to be "readily apparent that such a limitation on liability is one which would have a direct bearing on the premium rate under which the insurance would be written; that it is therefore a substantial portion of the insurance contract, and one entitled to be respected by the courts."

How the "limitation on liability" referred to might affect a claim of the insured for indemnity we need not consider. If there is such a limitation on public liability, the protection is far from adequate. According to the contention, just when the public's risk becomes greatest, its protection ceases.

It is inconceivable that the authorization is merely to operate between the city limits of the two towns mentioned as termini. Whether any rule or regulation of the Corporation Commission adopted under the statute forbids deviating from the regular route to receive or deliver passengers, we do not know. Nothing we have seen in the statute prohibits it. "Public Highway" is defined to include city streets. Section 1 (e) of the act (1929 Comp. St. § 11-1001 (e). "Fixed Termini" or "Regular Route" is defined as "the termini between which, or the route over which such motor carrier shall usually or ordinarily operate, though departures from such termini or route may be periodical or irregular." Section 1 (i) of the act (1929 Comp. St. § 11-1001 (i).

Of course, the expression "pursuant to a certificate of convenience and necessity," as used in the rider, does not mean that a viola- tion of the operating rules or rules of the road is to relieve the insurer from liability. Such violations perhaps most often occasion the injury.

The complaint fairly shows that the vehicle was being operated on the highways of this state in the conduct of the motor carrier's business. The motor carrier was operating as a common carrier of passengers under authority of a certificate of convenience and necessity, if not at the moment in strict conformity to its requirements. That is sufficient.

The judgment will be reversed and the cause remanded with a direction to overrule the demurrer. It is so ordered.

SADLER, HUDSPETH, and ZINN, JJ., concur.

BICKLEY, Justice (dissenting).

My study of the statute convinces me that the Legislature defined the liability of the insurer as secondary.

It seems to be the view of the majority that, if the insurer is sued singly, its liability is secondary. Finding nothing in the statute on the subject of joinder, and general principles opposing it, I am unwilling to agree that the circumstance of joining the tort-feasor converts the statutory secondary liability into a primary one. I think the statute means the same thing all the time.

I agree with the majority that, "sued singly, the insured may validly object that its liability to pay is dependent upon adjudica-

tion against the tort feasor." This being so, it is apparent that the further statement in their opinion that: "There is no point of time to which 'immediate' can reasonably relate except the time of sustaining the injury," is incorrect.

I agree that the purpose of employing the word "immediate" is to indicate an elimination of time and event between some point of time and the right to sue.

Being convinced that the liability of the insurer is secondary under the statute, the idea of the right to sue the insurer jointly with the tort-feasor is repelled.

The majority reach their decision through the force they ascribe to "immediate," as employed in the statute, and say that other language of the section, technically taken, as calculated to express a secondary liability on the part of the insurer, must yield to "immediate." Under my view, it was not necessary that there be any yielding of one expression of purpose in the section to another. I relate "immediate" to a different point of time than do the majority, and, by so doing, other portions of the section are not destroyed. My approach is similar to theirs, but I reach a different result. As is said, the very fact that there has been so much controversy over this question of joinder, with lines so clearly drawn, suggests that the Legislature sought and inserted words not found in other statutes, which it thought would settle the matter. In fixing the liability of the insurer, it required the filing and approval of a policy of insurance *"guaranteeing the payment* to the public of all losses and damages proximately caused by the negligence or wilful misconduct of such motor carrier," and that the insurance policy "shall provide a *guarantee of payment* of all loss or damage caused as aforesaid," etc.

The language *"guarantee of payment"* is easily understood. In Ellis v. Stone, 21 N. M. 730, 158 P. 480, L. R. A. 1916F, 1228, this court held that, where a contract provides in effect for the payment of notes executed and to be executed by others in favor of the parties named in the contract, in the event that the makers default in the payment of the notes in accordance with the terms mentioned in them, the promise is collateral to the principal obligation of another, and is not a direct promise, without condition or independent contingencies, to pay the debt referred to, and is therefore a *guaranty* within the meaning of the law. See, also, 28 C. J. Guaranty, § 1.

Guaranty of payment, as employed in this section, means that the guarantor will pay if the tort-feasor *does not,* and not that it will pay if the tort-feasor *cannot.* The latter situation would have been appropriately described by the expression "guaranty of collection." Section 8 of the article on Guaranty, 28 Corpus Juris, states: "Although one of the meanings of the word 'guaranty' is 'indemnify' or 'save harmless', and the word 'guaranty' may be used to create an obligation to indemnify one against loss, there are important differences between a contract of guaranty and one of indemnity. A guaranty

being a collateral undertaking *presupposes some contract or transaction as principal thereto;* while a contract of indemnity is original and independent, to which there is no collateral contract and with respect to which there is no remedy against the third party. In an indemnity contract the engagement is to make good and save another from loss upon some obligation which he had incurred or is about to incur to a third person, whereas in a guaranty the promise is to one to whom another is answerable."

In the note to the foregoing text, the following statement is made of the distinction: "There is a well-understood difference between a guaranty of payment, and a contract of indemnity against loss, as the result of the non-payment of a debt. In the first case the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity, or at the time when payment was guarantied. In the second the contract partakes of the nature of a guaranty of collection, no liability being incurred until after, by the use of due and reasonable diligence, the guarantee has become unable to collect the debt from the principal debtor." Burton v. Dewey, 4 Kan. App. 589, 46 P. 325; Osborne & Co., D. M., v. Lawson, 26 Mo. App. 549." The books are full of similar definitions. See Words and Phrases.

. There is no reason to suppose that the Legislature did not know the meaning of the language "guaranteeing the payment" and "guarantee the payment," and that they are defined by the lexicographers and law writers as implying a secondary liability.

Since "guaranty of payment" means that the insurer shall pay if the tort-feasor *does not,* it might have been feared that the expression would be confused with "guaranty of collection" which latter would postpone the liability of the insurer until due and diligent but unsuccessful efforts of the judgment creditor had been made to collect his judgment. Again, it might be contended that, since even "guarantee the payment" being a promise to pay if the tort-feasor *does not,* a suit could not be commenced until demand had been made by the judgment creditor upon the tort-feasor judgment debtor for payment of the judgment and payment refused. So the Legislature said that the insurance policy "shall be for the benefit of and subject to immediate suit or action thereon by any person who shall sustain actionable injury or loss protected thereby."

We all agree that the insurer could not be required to *pay* until the loss and damage has been adjudicated in an action against the tort-feasor. The provision for "immediate suit" eliminates "time or event" between such adjudication and suit by the injured person against the insurer. To my mind, "immediate" thus reasonably relates to the time it is ascertained that there has been loss or damage protected by the policy of insurance. As said by the Arizona Supreme Court in Smith Stage Co. v. Eckert: "It also appears from what we have said that the words 'loss and damage' mean a real loss—

one, at least so far as the indemnity company is concerned, that has been put into judgment against the assured."

This is evidently the construction placed upon the act by the Corporation Commission in formulating the New Mexico indorsement or rider. The rider states: " * * * The insurer * * * agrees to pay any final judgment within the limits set forth in the schedule * * * for injury to and/or death of persons * * * resulting from the ownership, maintenance or use of any and all motor vehicles pursuant to a certificate of public convenience and necessity issued by the Corporation Commission of New Mexico."

This rider does not require the showing of a failure of the tort-feasor to pay a final judgment nor even a demand for payment of such judgment as a condition precedent to the payment by the insurer of such judgment. This rider seems to construe "immediate" as eliminating the intervention of time or event between the rendition of final judgment against the tort-feasor and the attaching of liability to the insurer. Such liability attaches immediately upon the rendition of the judgment. At that instant, the liability of the insurer becomes fixed. The failure of the insurer to discharge this liability gives rise to a cause of action against it, in the sense that a cause of action is the remedy and "immediate suit" may be brought against it. I cannot discover that the Legislature intended to require a contract imposing a duty upon the insurer under certain circumstances and provided also for a suit against it in advance of a breach of such contract. The majority say the statute "does not prevent postponement of the liability to pay," yet permits suit before the breach of the postponed duty. I confess I do not follow them. So I find that the promise in the rider is consistent with the statute, and that such promise therein to pay the judgment is equivalent to guaranteeing the payment of loss and damage.

That the Corporation Commission, which is charged with the duty of approving such policies of insurance, thought it meant the same thing, is apparent from its approval of the policy of insurance. It is a familiar rule of statutory construction that: "The contemporaneous construction placed upon a statute by the officers or departments charged with the duty of executing it, is entitled to more or less weight, especially if such construction has been made by the highest officers in the executive department of the government * * * and, while not generally controlling, where the case is not extreme and no vested rights are involved, such construction should not be disregarded or overturned except for the most cogent reasons, and unless clearly erroneous. Even where the executive construction is unsupported by law, it will be disturbed only when the issues presented require it. Contemporaneous construction within the meaning of the rule, is the construction which the executive departments or officers charged with the enforcement of the statute give to it at or near the time of its enactment." (As in the present case.) See 59 C. J. Statutes, §.609.

This consideration is strengthened by the fact that the rider was prepared and adopted with the approval of the Attorney General, who is the legal advisor to the Corporation Commission.

The original policy of insurance provides that, in case insolvency or bankruptcy of the assured shall occur, "and an execution on a judgment recovered in a suit against the assured covered by this policy is returned unsatisfied, the judgment creditor shall have a right of action to recover the amount of such judgment against the company (insurer) to the same extent that the assured would have had to recover against the company had the assured paid said judgment."

Section 71-162, Comp. St. 1929, requires companies licensed to transact an insurance business in this state to file forms of its policies with the insurance department. An examination of forms of a number of such companies on file in that department and in the office of the Corporation Commission discloses that policies of many such companies contain provisions very similar to those quoted in this paragraph. I have no reason to doubt that the Legislature, in enacting chapter 129, N. M. Laws 1929, were cognizant of such provisions, and intended that the provision authorizing "immediate suit" should serve to eliminate the conditions of execution on a judgment against the assured returned unsatisfied as a condition precedent to the arising of a right of action against the insurer.

The majority say the construction I have proposed would withhold from the public benefits of a remedial statute which they do not doubt the Legislature intended to confer. Such benefit, I take it, is the avoidance of a possible additional lawsuit. By the terms of the original policy of insurance, it is provided that upon the occurrence of an accident the Assured shall give notice thereof to the insurer, and, if a claim is made on account of such accident, the assured shall give like notice thereof, and, if thereafter any suit is brought against the assured to enforce such claim, the assured shall immediately forward to the insurer every summons or other process as soon as the same is served, and the assurer agrees to defend in the name of and on behalf of the assured any such suit. In Cannon Ball Motor Freight Lines v. Grasso, 59 S.W.(2d) 337, 343, the Court of Civil Appeals of Texas, in an opinion handed down in February this year, considering the question of joinder in such cases, answered the argument of supposed benefit to the public of joinder, and, deciding against it, said:

"It has been held that, where an insurance company comes into a suit, furnishes its own attorneys to defend the suit, examines and cross-examines witnesses, argues to the jury, and participates in the trial as fully as if it were a party, after the plaintiff has secured a favorable verdict from the jury, he may by motion in the original suit have judgment over and against the insurance company, as the law treats as parties all real parties to the litigation, whether technically parties or not. In other words, by participating in the proceedings, one is estopped by the judgment as to any question actually litigated and de-

cided therein. Haines v. West, 101 Tex. 226, 105 S. W. 1118, 130 Am. St. Rep. 839; 15 R. C. L. §§ 481, 483. Thus it is not necessary to name the insurance company in the original suit to avoid a multiplicity of suits."

If the assured should fail to notify the insurer, or in any respect fail to comply with its agreements with the insurer, such failure to so comply would be no defense to a suit by the public to compel the insurer to pay the judgment because the rider formulated to comply with the statute contains an unconditional promise to pay the judgment. So I think the supposed public benefit of joinder is more imaginary than real. Since it does not appear that any attack could be made by the insurer upon the judgment which the motor carrier might not itself make, I am not apprehensive of delay, since ordinarily the insurer would be penalized for the delay by being required to pay interest on the judgment.

On the other hand, the Texas Court in the same case, considering another argument of convenience, said: "The question is raised as to what injury will result if the insurance company is joined. In Bergstein v. Popkin, 202 Wis. 625, 233 N. W. 572, 575, the court said: 'Whether or not it is an indictment of our jury system, it is a fact recognized by everyone that the purpose of making the insurance company a party defendant is to increase the award of damages made against the insured. That it has that effect, no one familiar with the trial of cases can doubt.'"

When I contemplate the objections to joinder, and the fact as the majority concede that general principles oppose it, and having in mind the rule of statutory construction that we are to reconcile seeming inconsistent provisions of a statute, and endeavor to harmonize them, I cannot interpret "immediate" as nullifying the language used earlier in the section importing secondary liability of the insurer and ascribe to the Legislature an intent to set aside general principles controlling joinder of actions and parties, when it did not expressly nor by necessary implication do so, and when I find a field for the operation of "immediate" which comports with the legislative policy declared earlier in the section and does not upset general principles.

Entertaining great respect for the opinions of my associates, I find myself in disagreement with their views in this case, which, as is said, is one of great public importance. Therefore I dissent.